———o———

### *Elijah Paine* vs. *Lindy Webster, et als.*

That there may be defects in the description in a levy on real estate of which the debtor has no right to complain. To others he may object.

That a purchaser under a deed of trust, can hold only subject to the stipulations and conditions contained in such deed.

That the statute of limitations does not begin to run till the plaintiff's cause of action accrues.

This was an action of *ejectment* for a tract of land in *Swanton*, described as lot No. 147. The defendants pleaded the *general issue*, which was joined. There was a trial by jury in the County Court at the last April Term; when a verdict was returned for the plaintiff, under the direction of the court, with a view to save all the questions of law raised on trial, and let the same pass to the Supreme Court for a revision. Accordingly the parties agreed upon a case in the form of a bill of exceptions, which was allowed as such by the judges of the County Court, and in which is exhibited the claim of title set up by both of the parties, with the objections against, and decisions of the court upon the same. Both parties claiming under one *Silas Hathaway*, neither resorted to the charter as a foundation of title. The plaintiff claimed title by attachment and levy of execution; and the defendant by a deed from said *Silas*. Said *Silas Hathaway*, by a lease dated September 10, 1799, and recorded in the year 1811, leased and to farm let to *Moses M'Clure*, one of the defendants, and his heirs and assigns, the lot in question, to hold as long as grass grows, water runs or the sun shines, reserving to the lessor, his heirs and assigns all the mill-privileges and places for water-works of any kind whatever, and eight tenths of all ores, mines, minerals, white oak and pine timber—on the special condition, that said *M'Clure*, his heirs and assigns, should well and truly pay to said *Silas*, his

heirs and assigns, at the *Lower Falls* in *Swanton*, on *Missisquoi river*, at a certain place to be afterwards appointed by said *Silas*, $12,50, for the hundred acres contained in the lot ; also pay all taxes that should be laid upon the land &c., and, upon neglect to pay said taxes or said rent, so that two years' rent should become due, and remain unpaid, then said *Silas*, his heirs and assigns to re-enter and take possession, and put out said *Moses*, his heirs or assigns.   Messrs. *Hitchcock* and *Allis*, by a writ dated ——, and served in October, 1803, in their favor and against said *Silas Hathaway*, caused all the lands in said town of *Swanton* to be attached as the property of said *Hathaway*, and they pursued their action to final judgment, which was rendered in their favor on the last Monday of August, 1805, for the sum of $31,027,29 damages, and for the sum of $61,55 cents cost ; and took out their execution, dated September 9, 1805, which is agreed to be the day when they could first have their execution without leave of court, or the legal day of the rendition of judgment.   On the 8th day of January following, the sheriff began the levy of said execution upon a vast many lots of land in said town of *Swanton*, amounting to upwards of nine thousand acres in the whole, and says in his return, that he completed said levy on the 7th day of February, 1806.   The recording of the execution and return, whatever was made, was made in the Town Clerk's office in *Swanton* on said 7th day of February, and was returned for record into the office of the Clerk who issued the same, and by him recorded on the 9th of said February.   Said execution and levy are made part of the case, so also is a mortgage deed, which is referred to, in said levy, dated September 20, 1803, executed by said *Silas Hathaway* to one *Simeon Hathaway*, jr. and to be noticed hereafter.   The plaintiff also adduced a mortgage deed from *Hitchcock* and *Allis* to himself dated December 9, 1806, of all the lands included in said levy, to secure to him the payment of $2566,48, payable within three months from said date.   The said defendants admitted themselves to be in possession of the lot sued for.

The defendants then produced and read to the jury a deed from said *Silas* to *Shadrach Hathaway*, one of said defendants, dated September 12, 1805, conveying all the lands of said *Silas* in said

*Swanton*, called about eight thousand acres, including all the lands by him before leased, and all the reservations, rents, profits, issues, remainders, reversions, rights, interests and demands he had to any lands in said town.

The defendants offered a deed from the plaintiff to one *John Curtis*, of all the lands included in said mortgage deed from *Hitchcock* and *Allis* to himself, in trust for certain purposes therein named, dated October 11, 1810. Also, a deed of the same premises from said *Curtis* to *Shadrach Hathaway*, dated April 7, 1815. These were objected to by the plaintiff, and both excluded by the court.

The defendants made several objections to the testimony offered by the plaintiff, which were over-ruled, and requested the court to charge in favor of the defendants upon several points, to which the court refused.

The counsel for the defendants contended—The first question in this case is whether by the levy of the execution mentioned in the case any title was acquired to the land as against *Silas Hathaway*. We contend that title by levy of an execution, being by operation of law, without the consent or act of the debtor, must be established in strict conformity with the law under which it is created.— The construction must be most strongly against the creditor.— 5 *Conn.* 592, *Hobart* vs. *Frisbee*. Our objections to the levy are 1. To the instrument itself, that is, the execution and levy. On this we contend,

That no other record of the execution was made than the one to which the name of the Clerk of the County Court was signed "*Darius Mattocks*;" whereas the name signed to the execution offered by the plaintiff in evidence was "*Darius Matthews*." We believe it to be as fatal as if no name of a clerk was recorded. The record would appear to be of a void execution, and would be evidence and notice to persons interested, that the creditor had by mistake or otherwise attempted to levy a void execution.

If the execution was not recorded, no title passed, at least, the levy could not be read in evidence any more than a deed not recorded.—*Stat.* 167, 210, 414, 415.

No land appears by the return of the officer to have been shown to the appraisers.—*Stat.* 210.

Franklin, Jan. 1828.

*Paine* vs. *Webster*, et als.

As to the description of the property levied upon; we contend that it must appear to the court in an action of ejectment that the property sued for is the same that was appraised: it must apear what was appraised, that the court and the parties may know precisely what the creditor has paid for, so that he may obtain the property for which he has made payment to the debtor and no more. A void levy may be taken advantage of by ejectment.—2 *Phil. Ev.* 203-4.—4 *Com. Dig.* 131-3.—*Douglas* 474-5. *Den* vs. *Abingdon*. The plaintiff has sued for and obtained a verdict for the land. What was appraised? Under the description of all that appertained to *Silas Hathaway*, it does not appear that the appraisers were shewn, or valued, any *thing* as belonging to him. Under the different words used, what did they value? Under the word "*right*," was it his own right, or right of his wife, right of possession or right of property? "*Title*"—was it by occupancy, by deed, good or doubtful, inchoate or perfect? "*Interest*"—was it that of tenants in common or in severalty, and to what extent, half, fourth or what? "*Estate*"—was it for life, for years, at will, or in fee? "*Claims and demands*" are unmeaning words. "*Equity of redemption*"—This is still more uncertain. What did the appraisers consider appertained to *Hathaway* in the land? What appertained to him in the Equity? If the creditor intended to take the land subject to the mortgage, he should have had it so appraised; but in this case he has taken what appertained to *Silas Hathaway* in the Equity of redeeming such right, title &c. as appertained to him in the land. If *Hathaway* owned the land and made sales, it might or might not be his duty to redeem the whole land; but his interest in the land, subject to the mortgage, would depend upon what remained in his hands. This was subject to change every day by deeds, leases, or any thing that affected *Silas Hathaway's* interest in the lands.— The value of *Hathaway's* interest depended on his right and interest in the land, and equity of redemption. It does not appear what the appraisers considered appertained to *Hathaway* in either.— This lot was excepted from the mortgage. "*Remainder* and *reversion*"—What was the particular estate? what was *Hathaway's* interest in the reversion? It appears by the case that *Hathaway* had no remainder or reversion. If it was intended to take the

land, and thus acquire all *Hathaway's* ⎰ Franklin, Jan. 1828.

right, title, interest &c. in the land, the levy ⎱ *Paine* vs. *Webster et als.* must have been on the land ; the appraisers must have valued the land itself. The law makes them judges of the value of property, but not of the nature or extent of the debtor's right, &c. or of their value. All the levies in this state have always been on *land.*— So in all the states where lands are appraised on Execution. If a less interest than the whole is levied upon, as part in common, it must be particularly described. In *England* the creditor only acquires, the right to the rents of the debtor. There this levy would be void. In this state where the land passes absolutely and forever, still more certainty should be required. A party may convey, his land by general description. A sheriff's deed in *New York* with such description is void. 9 *Mass.* 92, *Tate* vs. *Anderson.*—14 *Id.* 20, 28, 30, *Williams* vs. *Amory.*—17 *Id.* 299, 302, *Allen* vs. *Thayer.*—13 *Id.* 51 *Chickeny* vs. *Lovejoy,* et al.—12 *Id.* 163, *Bott* vs. *Burnell.*—1 *Conn. R.* 470, *Hitchcock* vs. *Hotchkiss.*— 13 *Johns.* 97, 102, *Jackson* vs. *Roosevelt.*—13 *Id.* 537, 551, same vs. *Lacy.*—2 *Phil Ev.* 203-4.—3 *N. H. Rep.* 140, *Howard* vs. *Daniels.*—3 *Id.* 496, *Mead et al.* vs. *Harvey et al.* If the lands had been set off and appraised, still the levy would be void, because part of the land was not described with sufficient certainty, and the appraisal was at one gross sum. In this case, if the levy is void in part, it must be wholly so ; as the appraisal was in one gross sum. The creditor might treat the levy as void, and pursue for his debt ; but how much will remain due to him ? If the creditor is not paid, the debtor may certainly treat the levy as void and retain his lands. In this case it was uncertain, what right *Hathaway* had to lease the land, what its value was as against strangers, and what the interest of *Hathaway* was in the lease at the time of the levy. The amount of the appraisal forms here no evidence in the case.—*Phil. E.* 417 alias 476. If it was the interest of *Hathaway* in the leases or deeds, it does not appear whether the rents &c. were appraised, or the land in order to obtain all *Hathaway's* interest. It does not appear the appraisers considered *Hathaway* had a good title to any, whatever they may have considered his claim to be.

An Equity of Redemption could not be taken by appraisal un-

O

Franklin, Jan. 1828. } der our statute, (*R. L.* 211, *sec.* 6.) if it
*Paine* vs. *Webster, et als.* } could, the amount due on the mortgage
ought to have been stated in the officer's return that it may appear
what the appraisers valued. If the act (*R. L. p.* 216.) is decla-
tory as to the appraisal and setting off to the creditor, so it must
be as to the duty of appraisers and sheriff. The evidence given
by the plaintiff, viz : the mortgage deed from *Silas Hathaway* to
*Simeon Hathaway*, the deposition of *William Page*, and the release
from *Simeon Hathaway* does not aid, his case ; this evidence was
not in existence at the time of the appraisal. The creditor can-
not take the equity of redemption in part of the lands.—5 *Conn.*
592.

The deed from *Paine* to *Curtis* was valid. *Paine* held the
property in *trust* for himself and *Curtis*. An adverse possession
does not prevent a transfer of the legal estate among the *cestui
que trusts*. The whole deed taken together shews the restrictions
were merely personal, or at most, applied to a sale on credit, and
directing how, in case of such sale, the payment should be secur-
ed. It was never intended to prevent him from selling for money.
*Curtis* was expressly authorized to convey in *trust*. *Shadrach
Hathaway* then acquired the *legal* estate, and *Curtis'* share in the
*equitable.* The court cannot presume the trust executed. That
is a question for the jury, and the presumption may be rebutted.
The facts in this case show conclusively that *Hathaway* never ex-
ecuted the trust by any conveyance to *Paine*. If the court
can presume an execution of the trust, they will not decide it to
have been executed where there is no presumption of the fact.—
Had the trust been executed, still *Hathaway* was himself one of the
*cestui que trusts* by owning *Curtis'* equitable share or interest.
He was then tenant in common with *Paine* and the other *cestui
que trusts.* This verdict cannot be sustained for the whole land.
There was no actual *ouster*, and if there was, plaintiff could only
recover his share, and that in Chancery. Although *Curtis'* deed
did not enable him to convey to *Bishop* or any other stranger, it en-
abled him to convey to the person in possession. 8 *Johns.* 105,
*Jackson ex dem. Humphrey vs. Given et al.*

We contend the statute of limitations began to run on the 12th
September, 1805, and continued to operate from that time. The

cause of action accrued when defendant
*Hathaway* took possession.    In all cases
of a title by the statute of limitations, the accruing title of the pos-
sessor is against him.    The levying creditor acquires no more
rights than a purchaser, except when the conveyance from his
debtor is fraudulent.    Contesting the levy by the defend-
ant does not vary the case any more than contesting a deed would
because it wanted a seal, witnesses, or other requisites.    The fif-
teen years, at all events, began to run six months after the 8th of
January, 1806, and expired 8th of July, 1821, twenty two days
before the action commenced.—11 *Mass.* 153, *Brown* vs. *The
Maine Bank.*—9 *Id.* 393, *Haywood* vs. *Hildreth.*

The levy of the execution in terms took effect subject to *Sha-
drach Hathaway's* deed.]    The attachment must be presumed to
have been abandoned, and the levy made for the purpose of con-
testing the deed to *Shadrach Hathaway.*    Had the creditors in-
tended the levy should relate back to the attachment, they should
have levied on the land : but even then they could not have held
this lot, as it does not appear of record *Silas Hathaway* owned it.
The writ was dated July 30th, and served August 1st, 1821.—
The interest of *Silas Hathaway* in the rents should have been ta-
ken according to the eighth section of the act providing for levying
executions (*R. L. p.* 212.)    Rents are not] the subject of a
proceeding according to the fourth section, *R. L. p.* 210.    In
case of a lease for years, or for life, reserving rent, the rents can
be taken only according to the 8th section.    In this case the grant
was in *fee simple* forever, reserving rents ; but from the nature of
the case, the rents must be taken according to the 8th section, or
not at all.    If the creditor *can* take the rents under that section,
he must so take them ; because that section confers a privilege on
the debtor in the redemption and value of the property which the
4th section does not.    It is said if the creditor will levy on the
land and pay for its value, he may obtain the rents, or any other in-
terest in the land.    This we deny ; the land may be worth as
much as rent, i. e. the land may be worth one hundred dollars,
and rent twelve dollars *per annum ;* the landlord relying on the
personal security of the tenant.    In such case the creditor would
obtain the rents without paying for them, as the appraisers would

Franklin, Jan. 1828.
Paine vs. Webster et als.

not take into consideration any thing but the value of the land. If in such case the rents were taken according to the 8th section, and the debt was only one hundred dollars, the land would in time revert to the debtor; whereas if the land is taken under the 4th section, it is gone forever if not redeemed in five months. If the appraisers value the rent, we say that rents being certain in their amount were not intended to be the subject of appraisal. The law declares what shall be their value in the payment of debts, but if they pass to the creditor by appraisal either of the rent or of the land, their value would be uncertain, a rent of ten or twelve dollars *per annum* might pass for one hundred dollars; this would depend on the opinion of the appraisers; and in such case, the debtor would be limited to five months redemption; but by the 8th section, and its proviso, the debtor is ensured the full amount of his rent and allowed to redeem at any time. In this case the appraisers might have valued the land at half the value of the rents. This value of the land is fluctuating, and may afterwards become sufficient to produce the rents. If rents like the present cannot be taken by the 8th section, creditors would in most cases be without remedy. Suppose the land to be worth eight or ten times as much as the rent. Rents do not come within the description of property subject to be appraised;—R. L. 210, s. 3 & 4 : they cannot be divided so as to make several landlords at the same time. We contend the tenants could not be subject to forfeiture until notified of the assignment of the lease or grant; the only mode in which the plaintiff could proceed was to appoint a place of payment, to require the tenants to attorn, and pay rent, and in case of refusal or neglect to pay the rents according to the terms of the grant, proceed by ejectment; but until he has entitled himself to the benefit of a forfeiture, he cannot maintain ejectment against any one of the defendants.—*Adams' Eject.* 16, 22, 23.—*Shep. Touch.* ch. 13, p. 253, 262-4.—8 *T. R.* 2, *Da Costa* vs. *Wharton.* The levy was not completed within the five months from the rendition of the judgment. The five months expired on the 8th February 1806. In all cases where the time is to be computed from any act to be done, the day on which the act is done, is included.—2 *Doug.* 464, *Rex* vs. *Adderly.*—3 *T. R.* 623, *Castle* et al. vs. *Burdell.*—3

*East*, 407, *Glassington et al.* vs. *Rawlins*  ⎧ Franklin, Jan. 1828.
*et al.*   So is all our practice.  ⎨ ─────
                                     ⎩ *Paine* vs.*Webster et als.*

The counsel for the plaintiff contended, That the facts as they appeared at the trial are stated in the case now presented to the court on this motion. The first objection to the evidence offered by plaintiff, is that in the record of the execution and return in the town clerk's office, there is a mistake in writing the name of "*Darius Mattocks*," instead of "*Darius Matthews*," a clerk of the court from which the execution issued. It would seem sufficient to remark here, that the record of the execution and return in the town clerk's office, agree in every important particular: the sum, the date, the parties, the court and the term of the court in which the judgment was rendered. If the object then of recording be to give notice, that object is surely answered in the present case; no honest enquirer could be deceived. But the course of the court is to overlook such mistakes where no amendment can be ordered and no injury be sustained by it.—12 *Wheat.* 570. The act of Parliament required "that the " certificate of the registry of such ship or vessel should be truly " and accurately recited in words at length, in the bill or instru- " ment of sale thereof, and otherwise, should be utterly null and " void to every intent and purpose;" but in this was inserted " 1783" for " 1782," and yet the bill of sale was judged good.— 4 *T. R.* 161, *Rollaston* vs. *Smith.* " A grant of a manor is good " although in reciting the fine it mistakes the plaintiff for the *defor-* " *ceant.*"—*Cro. Eliz.* 127. A mortgage deed to secure $3000, was recorded $300, yet it was adjuged to be recorded within the con- dition of a bond by one who has under taken to procure it recorded, but not so as to create a lien against a subsequent purchaser for more than the $300.—18 *Johns. R.* 544. The execution and levy are now recorded, and that is sufficient for any one except a subse- quent attaching creditor or a subsequent purchaser without notice. " In such case the execution and sheriff's return need not be re- " corded within any given time."—15. *Mass. R.* 137, *McLellan* " vs. *Whiting*. In the *scire facias* the christian names of both of " the plaintiffs on whose suit the bail bond was taken were mis- " stated, *James S. Colburn* and *William Gill* for *John S. Col-* " *burn* and *George W. Gill;* but they were described as mer-

Franklin, Jan. 1828. } " chants under the firm of *Colburn &*
*Paine* vs. *Webster, et als.* } " *Gill*;" and the plaintiffs had judgment
on the *scire facias.* 10 *Mass. R.* 20, *Colburn and Gill* vs.
*Burton.* The sheriff had in his return stated, that he levied on
the land, completed the levy and appraisement, and delivered
*seizen* on the 12th of January, whereas it was in part done on
the 22d. A motion was made for the officer to amend his re-
turn, but the court decided that they would reject the date and
establish the levy.—13 *Mass. R.* 529. The justice certified that
A. C. was sworn to appraise, &c. B. C. made the appraisal; but
the sheriff returned that he caused B. C. to be sworn, &c. and it
was holden to be good.—14 *Mass. R.* 20, *Williams* vs *Amory.*

It is objected, That it does not appear by the officer's return
that the land levied on was shown to the appraisers. This is
certainly implied in the return, that he caused the land to be ap-
praised, &c. How could it have been appraised, if not shown to
or seen by the appraisers? The court will presume that the officer
did his duty in this respect. It is not required in *Chipman's*
forms.—*N. Chip. R.* 364–5.

It is objected, That the description of the right of *Silas Hatha-*
*way* as set forth in the return is vague and uncertain, that it does
nor appear what was levied upon or appraised, or that any land
or specified property was levied upon or appraised; and the re-
turn is therefore void. This is, without controversy, the most dif-
ficult point in the cause, and yet, it is believed that the return is
good. The lands are no doubt sufficiently described by the num-
bers of the respective lots, that is, the return describes them
" with as much precision as the nature and situation thereof will
" admit," in the words of the statute. The court will intend that
the lots as described in the return had been surveyed by the pro-
prietors, and a plan and survey thereof returned, and that these
proceedings had become matters of record in the proprietor's
clerk's office. The lots therefore are as well known by their
numbers and better than they could be by an actual re-survey, in
which the corners, points, and distances should be given. But
the objection is that the interest of the judgment-debtor is not de-
scribed, or in other words, that it does not appear by the return wheth-
er the land itself, or some real or imaginary interest of the debtor was

the subject matter of valuation. The words <span>Franklin, Jan. 1828.</span>
of this part of the return are "all the <span>Paine vs. Webster et als.</span>
"title, interest, estate, claim, demand, equity of redemption, re-
"mainder and reversion, which appertained to the said debtor in
"and unto the aforesaid land." We may inquire what is the ob-
vious import of these expressions? It is certain that neither the
sheriff nor the appraisers undertook to decide what was the na-
ture or extent of the debtor's title in the lands. If they did not
undertake to judge what the debtor's title or interest was, how
could they appraise any particular interest or estate? On
what, in short, could they exercise their judgments but the land
itself. Their using so many terms expressive of title or interest
in reality clearly shows that they did not take it upon themselves
to judge by which of these terms the debtor's interest was defined.
What then could they appraise, or the sheriff set off, but the land
itself? What is all the *interest, title,* and *estate* in a piece of land
but the land itself? The word estate clearly implies all that a
man can have in lands.—2 *Bla. Com.* 103. The meaning is plain
and obvious, and on first perusal *no one* could doubt. The plain
meaning is : we have appraised this land and all the interest of
defendant therein. But if they did intend to judge of the title, is
the court bound to believe that they misjudged, or is the presump-
tion of law that they judged correctly? If they examined the
title they found that the debtor was in the perception of rent to the
amount of the interest on the value of the land, and that the rever-
sion was in the debtor and this they appraised. And what is this
but appraising the land itself? Neither the rent or the reversion
could pass without the lands. But to say I have bought a man's
land, or his estate, or interest in the land, are all expressions of
the same import, especially when addressed to one who knows the
title. But should we say, we have *purchased* or *appraised* or *set
off* all A's *interest* or *estate* or *title* in lot No. 1. and he owns but
an undivided moiety of the lot, would not the meaning and legal
operation be perfectly obvious? How else could an undivided
interest be set off? Should the sheriff and the appraisers set off
and appraise the whole lot? Creditor then loses half his debt. If
they set off any undivided part or proportion of the land, they then
undertake to judge of the quantum of the debtor's interest, and

the 'gentlemen's objections arise in all their force. Suppose then they appraise and set off all the debtor's interest in the lot, would not the moiety be well set off and the title pass? If then such a return be good for a moiety, why not for the whole when the whole was appraised? Suppose the return should say, all his right, title, interest, &c. (being a moiety or a fourth) would not such levy be good for the one half or one fourth, as the case might be? Would it then vitiate the return if the words "moiety" or "fourth part" were left out? But here we are not without authority. It is said, "All the right, title, and interest, &c. of the "debtor would pass the remainder as in a deed."—14 *Mass. R.* 408, *Atkins* vs. *Bean et al.* If this be correct, then appraising and setting off all the right, title, &c. of the debtor passes the whole, if debtor owned the whole. We think that every presumption is to be made in favor of the return, when it does not appear that any thing wrong intervened. 14 *Mass. R.* 408, *Atkins.* vs. *Bean.*—11 *Mass. R.* 515, *Boylston* vs. *Carver.* —1 *Pickering* 521, *Start* vs. *Sherwin*—17 *Mass.* 440, *Montague* vs. *Gay.*

We contend not only that this return is such as will pass the land, but is in strict conformity with the spirit of the act. The act provides "that all houses, lands and tenements, belonging to any per- "son in his own right, in fee or for his life or the life of another, "paying no rents for the same, shall stand charged with all the "just debts &c. of such person."—*R. L.* 210, *sec.* 3. The act then directs "that when execution shall be extended on any *real* "*estate*, the same shall be appraised, &c. &c."—*sec.* 4. And in the latter part of the same section, "which appraisers after being duly "sworn by such officer, shall appraise such estate as shall be "shown to them, at its true and just value in money, &c." Now what is here to be appraised? the answer is, the estate (status) that is, the *right, interest* or *estate* of the debtor in the houses or lands—2 *Bla. Com.* 103. Now suppose the debtor is ninety years old and has only a *life estate* in the house or land, can it be pretended that the sheriff and appraisers are to shut their eyes as to the nature and duration of the debtor's interest in the subject matter of the appraisal, and appraise the house or land at its real

value as an estate in fee? · This would $\Big\{$ *Franklin*, Jan. 1828.
be monstrous injustice. Is it not man- $\Big\}$ *Paine* vs. *Webster, et als.*
ifest that they must take into consideration the age, health and
prospects of the continuance in life of the *tenant for life*,
or the tenant *per auter vie?* In such case then, the sher-
iff must set out the land by metes and bounds or by the num-
ber of the lot, &c.; but *the thing set off* and *the thing appraised*,
must be the right, interest or estate of the debtor in the lands thus
described, and can be nothing else.——14 *Mass. R.* 404; *Atkins* vs.
*Bean.* Why does the statute require the metes and bounds to be
set out? Merely that the parties may know the bounds of the terri-
tory in which the creditor acquires a right. But these metes and
bounds neither afford nor can afford, any description of the nature
and extent of the debtor's title, or of that acquired by the credit-
or. Whatever estate the debtor had is appraised and set off, and
all this, and this only, vests in the creditor. Now suppose in the
case of a life estate as above mentioned, the sheriff should return
after setting out the lands by metes and bounds, or describing it by
the number of the lot, he should proceed to say, that he caused to
be appraised and set off the life estate, or remainder or reversion,
or all the estate or interest of the debtor in the described premises ;
*is it possible that this would vitiate the return?* Would it be re-
turning any thing different from what they had done and were o-
bliged to do by law? Suppose the sheriff returns in case of a
fee that he has caused to be appraised and set off all the es-
tate or interest of the debtor in the described premises, being a
*fee simple*, or being a *remainder*, or being a *reversion*, or being an
*equity* of *redemption.* Would any one of these be uncertain ?
Could not the court understand which was appraised ? and would
ny of these vitiate the return ? And suppose they actually apprais-
d and set off (as it should after turn out) the true and legal in-
erest which the debtor had in the premises, would there be any
reasonable objection to the return? It has been shown that in
some cases the appraisers must take into consideration the nature
and duration of the debtor's interest or estate ; and it is believed
that if they must take it into consideration and appraise according-
ly, that the sheriff may and ought to state the nature and duration
of the estate in his return ; yet, perhaps, the want of it will not vi-

P

tiate the return. If the sheriff and the appraisers may and must look into this subject, and when they do, and state it in the return, cannot the court do the same? and can they not by comparing the debtor's title with the return, see whether justice has been done, whether the same interest or estate owned by the debtor has been appraised? Is not this more easily done, than if the return were general, saying only that they had appraised and set off the land described, when in fact they had appraised the interest of the debtor, the life estate only? A return like this would be indeed rendered suspicious, merely by a comparison of the known by the estimated value in the return. The objection seems to be that the appraisers return what they actually did and were bound to do. It is said in 14 *Mass. R.* 408, *Atkins* vs. *Bean,* that it is not necessary, though convenient, that the appraisers or the officer in his return should set forth the nature of the estate taken, or the estate of the tenant for.life: " all the right, title and interest of the debtor" would pass the remainder as in a deed. Now the nature of the estate, or right, title and interest of the debtor, cannot be appraised or set off, or set forth, in any , other langauge than that of the return of the officer now under consideration. Either the land itself must be set off or the interest of the debtor therein ; one cannot be appraised and the other set off. If he set off the land, what use can there be in setting forth the nature of the debtor's estate in it? The latter is not the thing set off; such return would be inconsistent with itself. The only way that can be done, agreeably to the principles of this authority, is to describe the land in which the debtor has an interest, and set off that interest on the execution. And this is precisely what was done in the return under consideration. In comparing the language of the return with the lease to *Mc Clure,* which is made part of the case, and with the mortgage deed to *Simeon Hathaway,* which is also in the case, the court will find that in the return the nature of the estate of the judgment debtor is exactly described, or in the language of Judge Parker, in *Atkins* vs. *Bean,* " the officer has set forth the nature " of the estate taken." *Silas Hathaway,* the debtor, in his lease gives to the lessee an estate which may continue forever, defeasible on the non-performance of the conditions, that is the payment

of certain rents, then remaining in fee in the lessor; he also gaye a deed of mort- gage to *Simeon Hathaway* of which, at the time of the attachment, he had the equity of redemption. To the reversion the rents are incident, according to the case of *Montague* vs. *Gay*, before cited. Now among other things, this *equity* of *redemption* and *reversion* in the lands described in the return are appraised and set off: the other words descriptive of a title may be considered as synonymous, as comprehending the same interest, or rejected as surplusage. It does not appear that any less title than the debtor had in the premises was either appraised or set off; but if the other words imply any thing more than the equity of redemption and the reversion, then more was appraised and set off than the debtor held, and consequently the creditor and not the debtor was injured. The creditor may, therefore, hold all that is well described, though less than was appraised, as in the case of *Atkins* vs. *Bean et al.* before cited.

The court must come to the result that the lands are well described, that the nature of the estate of the debtor taken, appraised and set off, is well defined and set forth, and that the very interest set off is fairly appraised. Why then is not the statute complied with? and why does not the title vest in the creditor? In the argument thus far we have taken it for granted, that an equity of redemption might be taken and set off as real estate, and it is believed that we shall establish this position when we come to meet it in the form of an objection to the proceedings.

But conceding for the present that an equity of redemption cannot be proceeded with as real estate, how will the case then stand? It was certainly no privilege to the creditor to proceed in such a manner as to encumber himself with the payment of this mortgage money, nor was the estate more valuable for having this encumbrance upon it. Laying this out of the case, it will then stand that the lands in which the debtor had a reversion in fee were well described in the return, that the reversion in those lands, together with the rents which are incident to it, were appraised at their full and just value in money, and set off on the execution. This then was all the estate the debtor had in the premises, and more: the creditor, not the debtor is injured, and such creditor

must hold what is well described.    And being obliged to pay the mortgage money afterwards, will not impair his legal, but very much enhance his equitable title.    That such was the result appears from the deposition of *William Page,* which is in the case, and that the money for this object was furnished by the very person for whose benefit the plaintiff seeks to recover in this action.

The next objection is, That in the description of the equity of redemption, the levy did not state the amount of the mortgage as ascertained by the appraisers.    The mortgage deed is merely referred to in the -return by way of description.    It does not appear that they made any deduction from the appraisal on account of the mortgage, but appraised the premises at the true and just value in money.

But it is objected further, That an equity of redemption cannot be taken by appraisal.    It was understood that the court on a former argument, were satisfied on this point.    It may however be proper to repeat what was urged at that time on that subject, and in doing this the next preceding objection will come under consideration.    The ground of this objection is, that a right to redeem is personal property, and so should have been sold at vendue on the execution.    It is believed that the law has always been understood otherwise in this state.    It is an interest which can pass only by deed.    The seizen and right of possession is by our law in the mortgagor till condition broken.    The mortgagor can maintain, even after condition broken, *trespass* or *ejectment* against any one except the mortgagee and those claiming under him.    It is not easy to perceive why setting off the land on execution, which is in the possession of the judgment debtor, and who has the right of possession, should not convey the right which he has, i. e. to possess and redeem.    This is more analagous to our mode of proceeding in like cases.    Formerly personal estate might be appraised on execution, if the creditor so elected.—*Haswell's edition of the Statute,* 66.    The statute, p. 80, makes an equity of redemption liable to be taken on *mesne process* and on execution, but points out no mode of serving the attachment or levying the execution.    The sheriff is not in such case authorized to execute a deed.    If an attachment were served without leaving a

copy with the town clerk, would not a con- {  Franklin, Jan. 1828.
veyance by the debtor be good ? and if an { *Paine* vs. *Webster, et als.*
equity of redemption were sold at vendue, and the return not re-
corded in the town clerk's office, would not a conveyance by the
debtor be good ?   Yet if in this respect it is to be considered as
personal estate, no provision is made by any statute for filing a
copy of the writ, or recording the officer's return of the execution.
It is believed that the legislature in passing the 77th sec. of the
act considered an equity of redemption as real estate, and they
have accordingly coupled it with remainders and reversions which
are clearly such.   No instance of selling an equity of redemption
at vendue, on execution, is known to have occurred, nor is it be-
lieved that any has occurred in the state.   We may therefore con-
sider the act of 1824 as declaratory of what the law has always been
in this state, rather than as remedial.—*R. L.* 216. *Cruise on Real
estate* 125-6—1 *Atkins* 603. An equity of redemption is consider-
ed in *England* and in most if not all of the *U. States,*as real estate.
In *England* the husband has a tenancy by the curtesy in an equity
of redemption of the wife.—1 *Cruise* 137. In *Connecticut* the wife
is endowed in an equity of redemption of the husband :  though it
is otherwise in *England.*   Yet the practice of suffering it is con-
demned by the courts as hard and unjust,though established by such
long practice, that it cannot now be questioned.—1 *Conn. R.* 559,
*Fish* vs. *Fish.*—1 *Cruise on Real Estate,*128-9.—1 *Conn. R.* 560,
vs.*Fish* vs. *Fish.*—2 *Id.* 600.—4 *Id.* 235.—3 *Id.* 211-13, *Scripture
Johnson.*  Now it may be asked how could this be done except by as-
certaining the value of the land, then computing the amount of the
mortgage money, and then deducting one from the other, and thus
fixing the value of the equity of redemption ?   And if this was
done in the case under consideration, does it not pass all the in-
terest and estate of the judgment debtor, whether it was a rever-
sion, or remainder, or a fee simple, when redeemed ?   If so, it is
not possible that inserting the other words, such as interest, estate,
claim, &c. should vitiate the return.   If they appraised the equity
of redemption without deducting the mortgage money, is the debtor
thereby prejudiced ?   Can he complain ?   In either case all
the estate of the judgment debtor passed, and what need we
more ?   Is it strange then, that as the law is, the Courts of Equity
in *England,* as long since as *Lord Hardwick's* time, had settled the

principle that a mortgage was never per sonal estate, that an equity of redemption was a real interest in the mortgaged premises, which might be granted by deed—which might pass by device—would de scend to the heir, and that a husband might hold it by curtesy,— that the penman of our statute (who was doubtless judge Chip man) should class an equity of redemption with reversions and remainders, as real estate, understanding, that it should be appraised on execution as such ? And are we by a decision in this case to place ourselves two hundred years behind every other place where the principles of the common law and equity have prevailed ? " When his (the mortgagor's) interest is not in ques " tion, the mortgagor, before foreclosure, or entry under the mort " gage, is now considered as the owner of the land."—6 *Johns.* 290-3—7 *Johns.* 278.—2 *Burr.* 978.—2 *Doug.* 632

In the state of *New York* all real estate is liable to be sold on execution. In *Massachusetts* they have a statute regulating the proceedings in the sale of an equity of redemption on execution. '· And yet the land mortgaged may be taken by appraisment if " no deduction be made by the appraisers on account of the " mortgage." 13 *Mass. Wellington* vs. *Gale.*—16 *Id.* 400, *White* vs. *Bond.* This accords with the proceedings under considera tion,—and yet it is said on the other side that the amount due on the mortgage should have been ascertained, and the sum deduct ed from the appraisal. If we are correct in supposing that an e quity of redemption before the act of 1824, might be taken by ap praisment, it then becomes a matter of indifference to the plaintiff whether the mortgage-money was, or was not deducted. It was the duty of the appraisers to examine into the nature, in order to ascertain the value of the property, as in the case of an estate for life ; and if they ascertained the value of the estate, without the mortgage, then ascertained the amount of the mortgage and de ducted one from the other, they by this measure, ascertained the value of the equity of redemption, and they could have appraised the equity in no other way. If they made no deduction, the debtor is not injured and cannot complain. The creditor only was injured ; but this seems no good reason, why he should also lose the remainder of his debt.

But it is objected that the sheriff made no demand of payment of the debtor. The statute provides "that if the debtor does not tender personal " estate, the officer may levy" &c. The return states that the debtor tendered no personal property, and that the officer could find none, and nothing more is required. But " the creditor may " levy on real estate, though there is personal " property, and " though it were attached on the writ. It is the debtor's own fault " that the money is not paid so as to save his land."—8 *Mass.* 113.

*Franklin*, Jan. 1828.
*Paine* vs. *Webster et als.*

It is objected that the lands attached were not holden on the attachment till the execution was levied, or rather till the levy was completed by recording the execution in the office of the clerk of the court where it issued, and so the deed of 12th September, 1805, from *Silas* to *Shadrach* took effect. The defendants are under a mistake in supposing that the return was not completed within the five callender months ; the term of the court in which judgment was rendered ended Saturday 7th September, execution could not, by law, issue until 9th September 1805, the record of the execution was completed February 9, 1806.—11 *Mass.* 204, *Bank of P.* vs. *Bank of M.* But if it were not so, yet where execution is levied before the lien is lost it may be completed afterwards. This is agreeable to the wording of the act "that personal "property shall be holden thirty days after final judgment shall " be rendered, and unless the creditor shall within thirty days take " said property in execution, the same shall be discharged; and in " case real estate shall be attached the same shall be holden five " calender months," i. e. for the creditor to take execution and seize the property, not complete the execution or levy.—*R. L.* 68.

"If land be attached on *mense process* and within thirty days " after judgment (for which time they are holden in *Massachusetts,*) " be taken in execution, the lien created by the statute will be " saved, though the sheriff do not complete the levy till they have " expired."—9 *Mass.* 393, *Heywood* vs. *Hildreth.*—2 *Caines* 243.

It is also objected, that the levy by its terms would convey no more than the interest of *Silas Hathaway* at the time of the levy. This truly seems trifling. Suppose the return had merely set off the lands of *Silas Hathaway* by metes and bounds would it be construed to mean the lands only which were his at the date of the

Franklin, Jan. 1828. ⎫ levy, or the lands which were his at
Paine vs. Webster et als. ⎭ the time of the attachment? It is said a-
gain that the interest of *Silas Hathaway* in the rents was not
conveyed by the levy, and could not be conveyed by the ap-
praisal. We know that both are necessary to complete the title :
neither alone could change the title; but when both concur, the title
passes. But this resolves itself into the same question before dis-
cussed—that is, the regularity of the levy on the reversion and
equity of redemption. If these were duly appraised and set off,
the rent follows as an incident, as was holden in *Montague* vs. *Gay*
before cited. By the statute " all houses and lands and tenements
" belonging to any person in his own right in fee, or for his own life, or,
" the life of another, paying no rent for the same, shall stand charged
with the debt, &c. *R. L.* 210, *s.* 3. All these are to be considered as
real estate and set off and appraised accordingly : *Silas Hathaway*
had an estate in fee (the reversion) in his own right, paying no rent
&c. Now if the fee or reversion could be set off, and the creditor
acquire a title to such fee, what becomes of the rent? *Hath-*
*away* could have no more right to the rents than he could have,
after parting with the fee by deed. Again, what would the cred-
itor acquire ? The tenants also had a defeasible estate. This de-
feasance might never happen the creditor would then have a rever-
sion in fee, and yet no beneficial interest in the land. If these
rents are not incident to the reversion, and do not pass with it,
they can be reached by no proceedings under our statute. They
cannot be taken as rents ; the statute only gives a remedy for the
rents and profits of lands leased for life or years. This is neither :
it is to the lessee, his heirs and assigns as long as the sun shines,
which makes an estate liable to be defeated by non payment of
the rent.—*R. L.* 212, *s.* 8.

But it is said that the plaintiff cannot recover without proof that
the tenants had been requested to *attorn*, or some notice that the
plaintiff claimed the rents. This would be correct had the levy
been on the rents, issues, and profits of lands rented for life or years
under the 8th sec. of the statute ; but cannot apply where the fee in
reversion is taken. The statute declares in proceeding under the
3d section " that the execution and return being recorded &c.
" shall vest a title in the plaintiff, &c." The statute giving six

months redemption, the officer cannot $\Big\{$ Franklin, Jan. 1828.
compel the tenants to *attorn.* They $\Big\}$ *Paine* vs. *Webster et als.*
were bound to take notice of the proceedings : they had become
matter of record in the town clerk's office. The case states that
the defendants held adversely and were paying rent to another
landlord ; which shows that they resist the plaintiff's claim.—
"Where the tenant denies the right of the landlord, no notice
"of the landlord is necessary. The tenant controverts the right
"out of which the notice is to arise. He disclaims the relation of
"landlord and tenant. It is an instant determination of the tenan-
"cy on his part."—7 *Bac. Abr.* 488. "If possession is adverse
no notice to quit is necessary."—*Cowp.* 621, *Doe* vs. *Williams.*
The statute of 1818 enacts, (*R. L.* 109,) "That the plaintiff in
"an action for rent shall not be required to prove a demand for the
"rent in arrear on a reentry on the premises but shall recover
&c," and as a substitute allows tenant to come in and redeem,
and these tenants after judgment may avail themselves of this priv-
ilege in this action.

It is objected further, that plaintiff cannot recover without proof
that a place has been appointed for the payment of rent according
to the terms of the lease. To this it is answered "that rents are
"always payable on the premises, and may be there tendered if
"no place is stipulated in the lease, or if the lessor is to appoint a
"place and neglect it. The provision is made for the benfit of
lessor, and by neglecting to avail himself of this benefit, he does
"not forfeit the rent. The tenant in such case may pay or ten-
"der on the premises."—18 *Johns.* 447, *Burnam* vs. *Conklin.*

Defendant, *Shadrach Hathaway,* sets up a title in himself by
offering to exhibit in evidence a deed from plaintiff to *John Cur-
tis,* dated 11th October, 1810, and one from *John Curtis* to him-
self dated 7th April, 1815. These were rejected by the court.
Defendant therefore asks for a new trial. The case states that
*Shadrach Hathaway* has holden adversely to plaintiff ever since
a cause of action accrued to him, which was two years after the
levy, that is, in 1808, and that the other tenants have ever since
paid rent to him ; all have then holden adversely during this pe-
riod. The deed, then, *Paine* to *Curtis,* executed in 1810,
was void by the the statute of 1807. And it would seem that

Q

Franklin, Jan. 1828.    a party claiming under a deed made ab-
*Paine* vs. *Webster, et als.*    solutely void by statute could convey
no title, even to one in possession, and such still is believed to be
the correct opinion, notwithstanding the decision in the case of
*Jackson* vs. *Given et. al.* 8 *Johns.* 105. It does not appear that
this case was argued at the bar, or that the subject was much ex-
amined by the court. KENT, Ch. J. has not, as he usually does,
supported his decision by authorities. He cites *Keite* vs. *Clopton,
Carter* 18, but this has no bearing on the point, nor is it believed
that any authority in point can be found. If the law were so, it
would be productive of much mischief; the grantee in such case
might recover on the covenants, and then turn round and sell and
convey to the party in possession ; and in case the grantee and
one in possession were bankrupt, even equity could afford no ade-
quate relief. Such construction of the statute seems uncalled for ;
the party in possession may as well purchase of the one in whom
was the legal title, leaving the grantor and the grantee in the void deed
where the law leaves them, *i. e.* the grantee without title, but with
a remedy on his covenants. And it is believed that where the
deed contained no covenants, an action for money had and receiv-
ed would lie for the consideration of the deed, or that notes given
in consideration of the deed might be avoided. Had there been
any decision to support the 'opinion advanced in this case, Judge
KENT would no doubt have availed himself of it to fortify his own.
Except so far as this case is to be regarded as decisive of the ques-
tion, it may now be regarded as wholly unsettled, and the court
will now settle the construction of this statute much on the same
ground as though the question were entirely new. The last clause
in the proviso of the act doubtless contemplates a deed from the
person having the title directly to one in actual possession. But
probably a more satisfactory answer to the title derived by de-
fendant, *Shadrach Hathaway*, under the deed from *John Curtis*, is
that the deed, *Paine* to *Curtis* is a deed of trust, or rather a deed
on condition. The deed recites that the grantor held the title in
trust for others—that the *cestui que trusts* had requested the trustee
to assign the premises to *Curtis* in such manner as to enable *Curtis*
to discharge the mortgage under which the plaintiff held the title.
And this discharge of mortgage was to be given on condition that

*Curtis* at the same time secured to the ⎰ Franklin, Jan. 1828.
plaintiff for the benefit of those for whom ⎱ *Paine* vs. *Webster, et als.*
he held in trust. And this was to be taken on the land, that is, at
the time of sale or of the release or discharge of the mortgage
deed to the plaintiff. If this be a condition, it is in nature of a
condition precedent, or in other words, the condition was to be
complied with *eo instanti* with the conveyance from *Curtis.* Now
if this condition had been performed, the title to the land, or to
some part of it, would still have been in the plaintiff. This deed
with the condition was upon record and well known to *Shadrach
Hathaway.* It was, therefore, his duty when taking his deed from
*Curtis*, to have given this security on the land. And the court
may well presume that he did execute such mortgage security on
the land. 7 *T. R.* 2, *Doe* vs. *Sybert.* Upon this presumption the
title is still in plaintiff, and the court will intend, after verdict, that
the jury did make this presumption. But if no security was
given on the land, the conduct of defendant in taking the convey-
ance from *Curtis* was a fraud upon the plaintiff and the other claim-
ants under the deed—a collusion between a bankrupt trustee and
fraudulent purchaser ; and so is void and cannot avail defendants.

But defendants claim under the statute of limitations. The action
was not commenced, say they, within fifteen years after cause of ac-
tion accrued to *Hitchcock* and *Allis,* or to the plaintiff. *Silas* and
*Shadrach Hathaway* had a right to receive the rents and did re-
ceive them 1st Jan. 1806. The first rent would fall due to *Hitch-
cock* and *Allis,* or to the plaintiff, 1st Jan. 1807. The lessor, or those
claiming under him, could not enter or sustain an action till two
years rent had fallen due and remained unpaid. The cause of ac-
tion, therefore, did not accrue to *Hitchcock* and *Allis,* or to the
plaintiff, till after 1st Jan. 1808. Fifteen years would expire im-
mediately after 1st Jan. 1823. This action was commenced 1st
August, 1821, and of course within the fifteen years. It can scare-
ly be pretended that payment of rent to *Shadrach Hathaway* in
1807, could be such a renunciation of the tenancy to the plaintiff,
or such an act showing that tenants hold adversely, as that eject-
ment would lie before a right of entry had accrued under the lease.
Plaintiff could take no notice of their paying money to any third
person, either as rent or otherwise. It could be no worse than

Franklin, Jan. 1828. } not paying at all to any one. Tenants
Paine vs. Webster, et als. } might at any time within the two years pay
rent to plaintiff notwithstanding they had paid to *Shadrach Hath-
away.* "Ejectment will lie in no case where plaintiff has no right
" of entry."—*Adams on Ejectment* 70.—*Taunt.* 202. Nor
would ejectment lie against *Shadrach Hathaway* for the mere act
of receiving rent of the tenants. This action will lie in no case ex-
cept where there is an actual possession—*possessio pedis;* as in this
case it would not lie against the tenants whose possession was actual,
neither would it lie against the landlord whose possession is con-
structive. The statute declares (*p.* 84, *s.* 8.) "That this action
" shall be brought as well against the landlord or landlords, if any
" there be, as against the tenant or tenants in possession of the prem-
"ises demanded; and if any such action be otherwise brought the
" same shall on motion be abated." Again, the levy was com-
pleted 9th February, 1806, by the execution and return being
then recorded in the county clerk's office. The statute gives six
months redemption, which would expire 9th August, 1806.—
Plaintiff could not on any ground enter till that time had elapsed :
the 15 years would expire 9th of August, 1821, but the writ was
served 1st August of that year. The rent was rightfully paid
to *Silas Hathaway,* 1st January, 1805, and to *Shadrach,* 1st Jan-
uary, 1806. No rent was due to *Hitchcock* and *Allis* or to plain-
tiff till 1st January, 1807. Fifteen years added will carry it to
January, 1822. But plaintiff could not enter till two years rent
had fallen due, which could not happen till 1st of January, 1808 ;
add fifteen years, and it will make 1st January, 1823.

It may be insisted that the judgment debtor had no estate in the
premises after executing the lease to *M'Clure,* on which execution
could be levied. It may be difficult to define very accurately the
nature of the interest vested in the tenant, *Moses M'Clure,* under
the lease. It is certain that the lessor did not intend to convey
a fee, otherwise he would have used words proper to express
such intent. It is, however, clearly an estate upon condition, and
whether it be a fee or some less estate upon condition, is not very
material. If it is supposed to be a fee, yet there is a reversion in the
grantor as in case of an estate in *fee tail.* In estates in *fee tail*
¹n case of a failure of heirs, the *fee simple* reverts to the donor, and

this remaining estate is a reversion, and <span>Franklin, Jan. 1828.</span> might under our statute be taken and set <span>_Paine_ vs. _Webster et als._</span> off on execution, and it would be more or less valuable according to the prospects there might be of heirs who could inherit under the entailment.—_2 Bl. Com._ 75.—_Sw. Dig._ 101.—In case of a _fee tail special_ the person through whom the issue was to come might be deceased, and in such case the reversion might be of great value, and more or less according to the age of the tenant in tail.— There is no covenant to pay rent. The equity of redemption is a reversion within the meaning of the 3d section of the statute.— But the lease itself contains several valuable reservasions, such as —_All the mill priviliges and places for water works of every kind whatever, and eight tenths of all ores, minerals, white oak and pine timber._ These are reserved to the lessor, his heirs and assigns. These may be considered as remainders within the statute, not having been granted by the lease. This lease is also a deed upon condition. The conditions are that the lessee his heirs and assigns shall pay the rent mentioned in the lease, and also pay all taxes assessed, &c. The lease also contains a clause of reentry to enable the lessor to compel the performance of these conditions, and in case of failure, to determine the estate. In which case all the right and interest of the lessee revest in the lessor. It cannot, therefore, be pretended that all these do not create a reversionary interest which may be taken in execution under the third and fourth sections of the statute.

It may be objected that the levy does not cover land contained in the mortgage deed to _Simeon Hathaway_, and so does not include the whole equity of redemption, according to the case _Scripture_ vs. _Johnson_, 3 _Conn. R._ 211-13. In that case the creditor levied on a part of the mortgaged land by metes and bounds, and set off the land itself. The case under consideration is distinguished from that, in this—that it apppraises and sets off all the debtor's equity of redemption in those lots which are described: but what was the debtor's equity of redemption in those lots?—It was a right to redeem those lots by paying the whole mortgage money and the creditor acquired the same rights by the levy.— This proceeding is not obnoxious to the objection made in that case. The mortgage deed is equivocal as to the description and

⎱ and qantity of land conveyed by it.   It is
⎰ not, therefore, certain that the return does
not cover all the land contained in the mortgage.

After the arguments were closed, and due consideration had, the opinion of the court was delivered by

HUTCHINSON, J. as follows : (he having first stated the case as herein before stated.)   The decision of the court in this case must involve such an amount of property, and embrace principles so important, and be made by two justices only of the court, we have felt disposed to receive all the light upon the subject, which a full investigation could afford, and become fully satisfied of the correctness of the principles we adopt, before a final decision is announced.   The cause has been so industriously prepared and so ably argued by the counsel on both sides the present term, that we may safely conclude that no matter of importance to the parties has failed of being presented to our notice. We are well agreed in most of the points presented, and in all that are of essential interest to the parties.   To avoid repetion, these points will severally be disposed of as they are mentioned.   1st. The defendants contend that, if the plaintiff has made out ever so good a title in and of itself, he has let it lie dormant till the statute has run in their favor.   Upon this point the case shows that said *Shadrach* claimed to hold under said deed from *Silas* to him of Sept. 12th, 1805, adversely to said *Silas* and to all claiming under said *Silas*, except said other defendants, who after that time, paid rent to said *Shadrach* according to the tenor of said lease, and was admitted by the plaintiff to have holden adversely to said *Hitchcock* and *Allis*, and to the plaintiff after the cause of action accrued to the said *Hitchcock* and *Allis*, and to the plaintiff, (if any) under the said levy.   The plaintiff's action was commenced by issuing the writ, July 30th, 1821, which was served, August 1st, of the same year.   It becomes necessary here to ascertain when the adverse possession of the defendants commenced.   If it commenced from the date of the deed from *Silas* to *Shadrach*, of September 12th, 1805, as contended by the defendants, the fifteen years were complete before this action was commenced.   It is evident the statute could not begin to run against the title of the plaintiff till he or those under whom he

claims, had a cause of action against the <span>Franklin Jan. 1828.</span>
persons in possession.   Until such event <span>*Paine* vs. *Webster et als.*</span>
there can be no neglect.   While the lands are vacant, or the
persons in possession do not claim to hold adverse to the plain-
tiff, he may rest quietly and safely.   What then, was the fact?—
*Shadrach* was not in possession at all after he took his deed, until
he became so by attaching to himself the possession of the other
defendants.   Until that event no action could be maintained a-
gainst him.   No action could be maintained against the other
defendants until they neglected to pay their rents or taxes,
so as to give a right for the landlord to reenter by the terms of the
lease, (which would not make the possession adverse,) or attorned
to a new landlord who claims adversely, and thereby effect an
*ouster* of the lessor or those claiming under him.   The case shows
nothing with any definite certainty, when the possession became
adverse to the plaintiff's claim.   Nothing surely till after July,
1806, which is the latest period of the commencement of the fif-
teen years to avail the defendants.   This objection to the plaintiff's
recovery is then disposed of.

2d.   It is objected, That the plaintiff had conveyed away his title
to *John Curtis*, who had conveyed to *Shadrach Hathaway*; and that
the court ought to have admitted these deeds in defence to the
action.   It should here be noticed that these deeds were exclud-
ed, not because the court undertook to decide the fact which
might show the possession of the defendants adverse to the plain-
tiff at the date of his deed to *Curtis;* but because it was admitted
by the parties to be thus adverse, and so it has been now treated
in argument.   But it has been urged that the deed was a *trust-
deed* and given by one trustee to another, and therefore not with-
in the statute.   The court consider that though the deed were a
trust-deed, and *Curtis* had an interest in it, in reference to his own
share, yet it was not given to him in execution of any trust, nor
to release to him his interest; but was a deed given to him as it
might be to any other person, creating in him a trust, and making
him an agent to the plaintiff to sell the lands, mentioned in the deed,
and take securities directly to the several persons for whom the
trust existed, and therefore would not be void by the statute, but
would operate as a naked power to convey.   But it is urged that,

admitting the deed void by the statute under other circumstances, yet the deed from *Curtis*, being to the *Shadrach Hathaway* he was in possession, it is not within the meaning nor mischief of the statute.— This is urged, upon the authority of the case of *Jackson* vs. *Given*, 8 *Johns*. 105. That case seems directly in point; and it may possibly be safe to treat it as law; but we entertain some doubts of its happy tendency. It seems in that case to divest the real owner of his land, by reason, however, that his deed was not recorded prior to the new deed thus procured. The creditors of a grantor may attach the land as his property, and if a person in adverse possession should obtain a deed from the grantee, and that should defeat their attachments, it would be a new mode of divesting rights. If that case establishes a rule, there must be frequent cases of exceptions to this rule as titles pass in this state. But this question may be decided for the plaintiff upon another and safe ground. The deed from *Paine* to *Curtis* carries its own conditions, on which alone he could convey; and the defendant receiving a deed without a compliance with those conditions, and furnishing security to each *cestui que trust* for his portion of the pay, can take nothing by the deed; and there was no pretence that any such conditions were complied with. Nor would the small interest of *Curtis* enable him to embarrass the interests of the other persons in all these lands. He might sell, if he could, such a piece perhaps, as would pay his own portion, but could sell in no other way, nor to any greater extent and give a valid title, without obtaining security directly to the other owners for their debts. He was not authorised to receive the money in pay, but only to receive securities which he could not afterwards discharge. These deeds we consider correctly excluded.

3. The defendants contend that if the plaintiff's title would otherwise be good, it fails by reason that his deed from *Silas*, though after the attachment, was before the levy, and the levy is so worded that it takes at best only the right *Silas* had at the date of the levy, and does not fasten upon the lien created by the attachment. The court, however, consider that, by the attachment, the right of *Silas* is put in *abeyance* out of his reach, not to be affected by any deed of his till the lien is, in some way dissolved,

and the interest is as properly called his  <span></span>  Franklin, Jan. 1828.
interest for the purposes of a levy by the  <span></span>  *Paine* vs. *Webster et als.*
attaching creditor, as if no deed were given by him to said *Sha-drach* ; and the expressions in the levy " all the interest, estate, " &c. of *Silas Hathaway*," fasten upon the lien created by the attachment as fully as if they had refered the expression to his interest, &c. at the date of the attachment.

4. It is objected that the execution and levy are defective in many, particulars, and the objection to the admission of the same in evidence ought to have prevailed. The first defect we shall notice is the defective description of the various lots and parts of lots of land intended to be levied upon. To support this objection several authorities have been cited, among which are 9 *Mass.* 92, *Tate* vs. *Anderson.*—7 *Id.* 475, *Barnard* vs. *Fisher.*— 14 *Id.* 20, *Williams* vs. *Amory.*—13 *Id.* 51, *Chickering* vs. *Lovejoy et als.*—11 *Id.* 163.—1 *Conn. Rep.* 470, *Hitchcock* vs. *Hotchkiss.*—*Id.* 551, *Jackson* vs. *De Lacy*. Said last two are cases of sheriff's sales. Also, 3 *N. H. Rep.* 140, *Howard* vs. *Daniels*. *Id.* 496, *Mead et als.* vs. *Harvey et als.* These cases are adduced to show the necessity of certainty in the description, and that this levy exhibits no such certainty ; and some authorities cited by the plaintiff afford an argument that the defendants have no reason to complain of the particular uncertainties to which this objection applies. The description appears to be very carelessly made, and some lots are so vaguely described, the plaintiff does not contend he can hold them. And the defendants do not pretend but that the lot now in questtion and some others are well described. Yet the defendants say that the appraisal, being only of one aggregate amount of all the lots, and some being not well described, vitiates the whole levy. The court have no doubt but that a defect affecting the whole levy, as if the appraisers are not sworn, or were not selected according to the statute, &c. might be avoided by either party. A defect tending to the injury of the debtor may be avoided by him. But when the defect, like the present, so far as this objection goes, only affects the creditor, and he is disposed to affirm it, and hold what is well described, and lose the remainder, the debtor cannot complain. Where the appraisal is thus in gross, the creditor must affirm *in toto* or not at all ; for he

R

Franklin Jan. 1828. ⎱ cannot hold the lots well described, and
*Paine* vs. *Webster, et als.* ⎰ claim a new execution for the amount of the
others unless that amount appeared by the appraisal in the levy and
return. A second uncertainty complained of in the description results
from a reference in the levy to a mortgage deed from *Silas Hathaway*
to *Simeon Hathaway, jun.* The levy says " these lands and certain
other lands appear by the records of the town to be contained in tha$_t$
mortgage." By this it seems that if the appraisers intended to
appraise subject to the incumbrance, the levy has virtually put
the whole incumbrance on that part of the mortgaged premises
included in the levy : whereas it is contended that the levy should
only have made the creditor tenant in common with the mortgagor.
This may be a delicate point upon which to establish a rule that
must govern in all cases. The statute has prescribed no rule ;
and no doubt many levies have been made in both ways. Prob-
ably enough, courts will feel compelled to decide both methods
to be legal, in cases that may arise, owing to the long practice a-
dopted. When a creditor levies upon a part only of the mortga-
ged premises, and has the same appraised subject to the whole
mortgage money, he has no benefit from his levy unless he re-
deems the whole. If he redeems the whole, the debtor cannot be
injured, and has no right to complain. Should the mortgagee, in-
stead of pursuing his mortgage, collect his debt on his personal
securities against the mortgagor, there would be a difficulty from
which Chancery alone could relieve. Such a case has probably
never existed in the state. The other mode too has its difficulties.
When the creditor by his levy becomes tenant in common with
the mortgagor, in the event either of a redemption or foreclosure,
or the mortgagee's relinquishing his mortgage, the levying cred-
tor or the mortgagor must resort to his writ of partition. The ob-
jections to the two modes are, therefore, nearly balanced. A fur-
ther objection is raised, to wit, that the mortgage was for an uncer-
tain liabilty, and not for a sum certain ; and treating it as a mortgage
if nothing in the end proved to be due upon it, would be injurious
to the debtor : and its uncertainty is compared to a writ of attach-
ment, served upon land, which, according to the case cited from
the 7 *Mass. Rep. Barnard* vs. *Fisher*, is too uncertain to be treat-
ed as an incumbrance. This principle is correct, if the uncer-

tainty, at the time of the levy, was such as    Franklin, Jan: 1828.
to make the principle applicable. On a    *Paine* vs. *Webster, et als.*
reference to the mortgage it appears to bear date September, 20,
1803 : by the condition it appears that said *Simeon* had signed with
and for said *Silas*, a note to one *Robinson* for two thousand dol-
lars, payable with interest in June, 1804 : and the condition is that
if said *Silas* should well and truly pay said note according to the
true intent and meaning thereof, and should in all things indemnify
and save harmless the said *Simeon*, so that said *Simeon* should not
have to pay said note or any part thereof, nor in any way sustain
damage or trouble, then said deed to be void—otherwise to remain
in force. This note had been payable something over a year and a
half when the levy was made, and in December following, to wit,
1806, the levying creditors sent the money and redeemed the
mortgage, and took a receipt from said *Simeon*, reciting the nature
of the mortgage and a decree of foreclosure made in this county
in December before the levy, and which was to expire January
1st, 1807. These facts, with the accompanying dates, are suf-
ficient to repel any presumption of uncertainty about the sum due
on the mortgage at the time of the levy. So far, then, as a refer-
ence in the levy to the mortgage is urged as uncertainty in the des-
cription of the lots of land intended to be included in the levy, and so
far as uncertainty is urged in the sum actually due upon the mort-
gage at the time of the levy, the objections cannot avail the de-
fendants. I may here add in reference to an idea suggested in argu-
ment, that if the appraisers, all other things being regular, had ap-
praised the land at its full value, allowing nothing for the incum-
brance, or allowing any sum not exceeding its full amount, the
defendants could not complain ; for the incumbrance is paid off
by the levying creditors, and, if not included in the appraisal, this
payment is a gift to the defendants, or to the debtors under
whom they claim. Appraising subject to the incumbrance, and
estimating the same above its amount, is the only matter in this
respect of which the defendants have a right to complain, which
upon the above facts ought not to be presumed. Another and
much more formidable objection to the levy is, that the levy is
not made upon the land, but upon the right, title, interest, &c.
of said *Silas* in the land. The sheriff says in his return "on
" such a day, I levied and extended said writ of execution on all

" the right, title, interest, estate, claim, demand, equity of redemption, remainder " and reversion, which appertained to the said debtor in and unto the " following described lands and tenements, &c." Afterwards he says he caused all the right, title &c. repeating the same words, to be appraised in part satisfaction of said writ of execution &c. at the sum of $26,050,37. Now this objection is not that the words used would not operate in a deed to convey the land if it was itself well described in the deed : but the objection is that such words and such only contained in the levy and appraisal leave it wholly uncertain on what ground the debtor is left; uncertain what the appraisers considered his interest and estate and equity of redemption to be. And though the amount of the mortgage might be certain as before noted, it is uncertain at what sum they considered it. It will be recollected that upon this objection, a new trial was granted two years ago in this cause ; but the court then expressed their willingness and desire to have this, and one or two other points, open to further examination. We must now suppose that all the research and reasoning that could be of use, have been put in requisition ; and the objection seems not to be fully met by the plaintiff's counsel either by authority or argument. They have raised an argument from the use of the word *estate* in the fourth section of the statute, p. 210. But the word *estate* does not there stand alone. The expression is, "when any execution " shall be extended on any *real estate*, the same shall be appraised" &c. The words *real estate* may be considered as the *genus*, of which, the words houses, lands and tenements, mentioned in the third section on the same page, form the *species*. If the real estate is levied upon and appraised and well described, there is no sound objection to the use of that expression, instead of houses, lands and tenements. But the word estate has no such definite meaning.— It means, according to all the authorities cited, a man's interest in some property. It may be applied as well to a man's interest in personal chattels as in land.

The plaintiff's counsel cite upon this point, the 14 *Mass. R.* 404, *Atkins* vs. *Bean et al.* The case itself is not much in point for the plaintiff ; for there the appraisers describe the whole premises by metes and bounds, and then appraise and set off to the

creditor, one undivided seventh part of Franklin, Jan. 1828.
the same. They do not appraise mere- Paine vs. Webster, et als.
ly the debtor's interest, or all his interest in the land des-
cribed ; but they appraise one undivided seventh part. The
fact was, the debtor did not own a seventh part, but only an
eighth part ; and the court decided that the levy was good to hold
the eighth part which the debtor in fact owned. They consider-
ed that this mistake could prejudice none but the creditor. The
counsel lay stress upon what the judge says in support of his opin-
ion, " that it is not necessary that the officer should set forth the
" nature of the estate taken, or the estate of the tenant for life.
" All the right, title, interest, &c. of the debtor would pass the remain-
" der as in a deed." This is wholly voluntary and unnecessary to sup-
port the opinion given in the case, and, if it means what is claimed of
it, we cannot subscribe to it as law. If the first clause only means,
according to the case, that not saying any thing about the interest
of the debtor, but speaking only of a certain undivided portion of
the land described, it may stand for law.

If in the case before us, the levy had been upon, and the ap-
praisal of, one undivided fourth part of the land ; or had said the
whole of the land ; or had said Silas' interest in said land, being
the remainder after the life of A B, or being the reversion after
the expiration of the term of ninety-nine years, commencing such
a day named, and the like—the levy would be good in point of
description to hold any estate of Silas that did not exceed that
described, in point of quantity. Again, the expression, all the
right, title, interest, &c. that any one could have in the land would
seem necessarily to include the land itself, at least, we should be
sure they appraised the whole. But when the expression is, all
the interest, &c. of Silas Hathaway in the land, we may ask,
what was his interest? If, after an expensive litigation this can
be determined, we may ask another question, which, according to
the rules of law, can never be answered. That is, what did the
appraisers consider his interest to be? If it apppeared from the
levy itself that the appraisers considered his interest less than it
was, that would not hurt the levy. But if they considered it
greater than it was, that would destroy it altogether. And no

Franklin, Jan. 1828. } less fatal is the total uncertainty of what Paine vs. Webster, et als. } they considered his interest to be.—— Their varied expressions imply a hesitancy what to call that interest ; and the testimony in the case, and the learned arguments upon it, would lead one not to wonder, if the sheriff and appraisers, without such aids as are now afforded, should indeed hesitate what to call that interest ; and if they knew not what to term it, they could not well know its value."

This disposes of the whole case. But the defendants' counsel have raised another cardinal objection, that if the levy were ever so regular as a levy upon land, yet said *Silas* did not own the land ; that he had no interest of which a creditor could avail himself otherwise than by levying upon the rents under the eighth section of the statute ; and have cited several authorities to this point. We are supposing this lease for the present purpose, as the counsel have supposed it, regularly recorded before the attachment of *Hitchcock* and *Allis*. If it was not recorded, probably, as regards the attaching creditors, the debtor owned the *fee*. This cannot have been overlooked by counsel. The case made by agreement, has probably presented the fair merits of the dispute.

In adverting to the lease attached to the case, we find its terms of duration are not marked by those words used by any elementary writers to denote the different degrees of interest in land. It is not a lease for years nor for life ; nor a lease to the lessee and his heirs and assigns forever ; but to hold to him and his heirs as long as water runs, grass grows or the sun shines. Beyond this none can enjoy a remainder or reversion. The land can be of no value when the sun ceases to shine upon it. These words must be considered equivalent to the term *forever*. *Silas Hathaway* then had no remainder or reversion at the time of the levy. He had conveyed no estate with a limitation upon which it could revert. He had only a right to receive the rents, and re-enter upon the failure of his lessee to pay the rents, taxes, &c. and by the statute of 1818, affirming what the courts had long before treated as common law, he could not re-enter in fact, if the rents, &c. due were paid into court after action brought to obtain possession.

This interest is not at all a tangible property, susceptible of a levy under the third section of the statute. It is probably within

the equity of the eighth section, under { Franklin, Jan. 1828.
which a creditor may levy upon the rents } *Paine* vs. *Webster, et als.*
and profits and compel the tenant to attorn. That section to
be sure, speaks of leases for life or years insuring rent. This is
not technically a lease for years; but its continuing so many
years would not afford a very equitable reason why a creditor
might not levy upon the rents of some of those years. But, allow
it to be a case omitted in the eighth section, still that will not place
it within the third section. With regard to the reservation of mill-
privileges, ores, pine and oak timber, &c. there is nothing in the
case that shows any thing to exist on this lot that is claimed as
being within this reservation. This objection to the plaintiff's ti-
tle is adjudged valid.

Further objections important in themselves, become unimpor-
tant in this cause by the decisions now made. The recording of
the levy in the county clerk's office appears to have been one day
after the five months expired. The authorities cited from *Mass.*
*Rep.* by the plaintiff's counsel, show that the recording there has
been considered, in certain cases, as referring in its effect to a pri-
or date, when the levy was otherwise complete and ready for re-
cord. There, however, the sheriff delivers seizin when he makes
his levy. Here, the debtor has six months in which to redeem
before he can be turned out of possession. We rather incline to
the opinion that the recording, in this state, is essential to the levy ;
and must be made in both offices within the five calendar months.
But as this is an important question of practice and of title, and
unnecessary now to be decided ; and as two only of the justices
of the court can sit in this cause, we make no definite decision up-
on this point.

Further objections are made to the plaintiff's recovering, such
as the recording the word "*Mattocks*" instead of "*Matthews*," in
the town clerk's office ; the want of proving notice to the tenants
to attorn, and the appointment of a place for the payment of the
rent according to the stipulations in the lease ; but without any
definite, and unnecessary disposition of these, a new trial is grant-
ed, and the cause must pass to the County Court for such new trial.

*Marsh* and *Bailey*, for the plaintiff.

*Brayton* and *Van Ness*, for the defendant.