WM. R. HENRY, Appellant, *v.* ERASTUS C. ROOT, Respondent.

Where an infant has purchased real estate, and has taken and continued in possession after becoming of full age, and has exercised acts of ownership over the same, he will be deemed to have ratified the contract of purchase.

An infant cannot retain the benefits of his contract, and thus affirm it, after becoming of age, and yet plead infancy to avoid the payment of the purchase-money.

What acts, after attaining full age, will amount to a ratification of the contract of an infant, elaborately discussed by DAVIES, J.

THE facts sufficiently appear in the opinion

*L. J. Burditt,* for the appellant.

*E. M. Harris,* for the respondent.

DAVIES, J. This action was brought to recover the amount of a promissory note for $600, made at Fort Des Moines, in the State of Iowa, by the defendant, whereby he promised to pay to the plaintiff, for value received, the said sum of $600, with interest at the rate of ten per cent per annum, on or before the 15th day of April, 1857.

The defendant set up in his answer two distinct grounds of defense: First. That the note was given for part of the consideration of certain lots, situated in the town of Logan, in the territory of Nebraska; that the agreement for the purchase of said lots was made by the defendant with one Campbell, the agent of the plaintiff, when and whereby the defendant agreed to purchase said lots at and for a price of $700; that he paid in cash $100, and gave said note for the residue of the consideration or purchase-money of said lots; that said purchase was the only consideration for the same, and that he relied wholly upon the statements and representations of said Campbell as to the situation and value of said lots. The answer then sets out the representations made, and that the plaintiff's title was good, whereas he had no title to the same, and such representations were untrue, and that he was deceived and defrauded thereby; that he, the

defendant, never had possession of said lots, and had never sold or conveyed any or either of them.

For a second defense, the defendant averred that, at the time of making and executing the said note, he was an infant, under the age of twenty-one years. On the trial the note was produced and read in evidence; and the plaintiff rested.

The defendant then offered himself as a witness, and testified, that at the time the note was executed he was not twenty-one years of age, and further testimony to the same effect was offered. The defendant attained the age of twenty-one years on the 25th of February, 1857. The witness testified, that on the 29th of January, 1857, the day after date of the note, he received a conveyance for said lots of land executed by Campbell as agent of the plaintiff, and that the same was acknowledged the same day. The plaintiff then offered the same in evidence, and the deed was objected to by the defendant's counsel, on the ground that it was not properly acknowledged nor authenticated; that it was not shown that the person who executed it had authority from the grantor, and also that it was not under seal, and therefore void. The court sustained the objection, and the plaintiff excepted. The plaintiff then offered to show by the witness that defendant took possession of the land under this deed, and that on the 19th of May, 1857, defendant conveyed a portion of the land to one Sandford B. Perry, of Chicago, by a deed not under seal, for the consideration of $100. This was objected to by the defendant, on the ground that no title was obtained by the defendant by the paper received by him, and the objection was sustained by the court, and the plaintiff excepted. The witness testified that the consideration of the note was for the conveyance of real estate.

The deed was then put in evidence by the defendant, and by it the plaintiff, for the consideration of $100 paid, the receipt whereof was acknowledged, and the further consideration of $600, to be paid on the 15th day of April, 1857, sold, released, and forever quit-claimed to the defendant all

his right, title and interest to the said real estate, and the plaintiff did thereby warrant and defend the above property. It was dated June 29, 1857, and signed, "Wm. R. Henry, by his agent, H. C. Campbell." It was acknowledged on the same day by the agent, before a notary public.

The court held and decided the paper in evidence conveyed no title to the land in question to the defendant, not being under seal, and no power of attorney shown; to which ruling and decision the counsel for the plaintiff excepted. The court also decided that the defendant was not bound to tender to the plaintiff a reconveyance; to which ruling and decision the counsel for the plaintiff also duly excepted. The court also held and decided that the defendant was not liable on the note, because he was an infant when he executed it; to which ruling and decision the plaintiff also duly excepted. And thereupon the court directed the jury to render a verdict for the defendant; to which ruling and direction the plaintiff also excepted. Thereupon, the exceptions were directed to be heard in the first instance at the General Term, where judgment thereon was given for the defendant. The plaintiff now appeals to this court.

There is no controversy that the defendant was an infant at the time this note was executed. If he has done nothing since attaining his majority which makes the contract obligatory upon him, then the direction of the court to the jury to find a verdict for the defendant was correct. But if, however, he promised to pay the note, after arriving at full age, or ratified the contract, or affirmed the purchase for which the note was given, then the note became obligatory upon him.

The defendant failed to sustain the allegation, by his answer, that any fraudulent representations had been made to him to induce him to enter into the purchase, or that there was any failure of title in the plaintiff, and, consequently, a failure of the consideration of the note.

There has been much discussion in the books as to what acts or declarations of a party will revive a debt barred by the statute of limitations, or one discharged by an insolvent or bankrupt discharge, or render obligatory and valid the con-

tract of an infant. There has been a commingling of all these cases in judicial opinions, and, frequently, no clear and marked lines of distinction have been presented. I shall make the effort to eliminate some principles which are applicable to each of these cases, and endeavor to show wherein they differ and the reasons for such difference, and wherein they are coincident, and the principles which have been established as applicable to these three classes of cases. A clear understanding of the various decisions, and the principles settled by them, makes such an examination imperative, and from it we shall discover the doctrine settled, and the reasons therefor.

In *Sands* v. *Gelston* (15 Johns., 519), SPENCER, J., lays down what appears to be the correct rules in reference to debts barred by the statute of limitations, debts of infants not for necessaries, and the debts of bankrupts discharged under the bankrupt acts. In all these cases, although, by reason of certain provisions of law, such debts cannot be enforced against the debtors, still the debt remains, and the moral obligation to pay continues in full force. Hence it is after a debt is barred by the statute in the one case, or discharged by the operation of the bankrupt or insolvent laws in the other, or in the case of the infant, who, on his attaining his majority, and not before, can make a legal contract, which can be *eo instanti* enforced against him, that, in all these cases, the moral obligation has been held a sufficient and legal consideration, without any other, for the promise or undertaking to pay the debt, by acknowledgment, ratification, or a new promise. In other words, the courts have, in truth, regarded the old debt as continued or revived, and no new consideration was required to support it. SPENCER, J., says, in *Sands* v. *Gelston,* "I never could see the difference, as regards the revival of a debt, between one barred by the statute of limitations and one from which the debtor has been discharged under the bankrupt or insolvent laws. The remedy is equally gone in both cases. The statute of limitations requires all actions on contract to be commenced within six years next after the cause of such action accrued, and not after.

The remedy being suspended after six years, there yet exists a moral duty on the part of the debtor to pay the debt; and accordingly, a promise to pay a debt not extinguished, but as to which the remedy is lost, is a valid promise, and may be enforced, on the ground of the preëxisting moral duty. There is, then, no substantial difference between a debt barred by the statute of limitations, and a debt from the payment of which the debtor is exonerated by a discharge under bankrupt or insolvent laws. Both of these rest on the same principle with a debt contracted by an infant not for necessaries; yet it is singular that in neither of the latter cases will the bare acknowledgment that the debt once existed and has not been paid, support an action — an express promise to pay being necessary." A review of the cases, on the question of what is necessary to revive a debt barred by the statute of limitations, will clearly show that a bare or mere acknowledgment of the existence of the debt is sufficient, as the law will imply or infer from its existence a promise to pay it; and it is of little moment whether it be regarded as a new promise or a revivor and continuation of the old one.

In *Johnson* v. *Beardslee* (15 Johns., 4), an acknowledgment of the debt was holden to be sufficient evidence for the jury to presume a new promise. In *Shulz* v. *Champlin* (4 id., 461), the defendant said the debt ought to be paid, and mentioned eighteen months as the time he wanted for payment. This was held a promise, sufficient to make him liable. In *Jones* v. *Moore* (7 Binn., 573), an acknowledgment of a subsisting debt was sufficient to take the case out of the statute, and it was held it would authorize the jury to infer a new promise to pay, or, rather, that the old promise was continued, or, as some choose to call it, revived. (*Mosher* v. *Hubbard*, 13 Johns., 510.) On the claim being presented to the defendant, he did not intimate that he intended to avail himself of the statute; but the only question to his mind seemed to be, whether the account had not been paid, and he promised to examine his papers, and, if he found he had paid the order, he was to write the witness, but as the witness testified he had never written, the court held that this was

sufficient to raise an implied promise to pay the money, unless on examination it should be found that the order had been paid, and there was no evidence whatever of any payment. (*Sands* v. *Gelston, supra.*)  SPENCER, J., says: "I am bound by authority to consider the acknowledgment of the existence of a debt within six years before the suit was brought, as evidence of a promise to pay the debt."

In *Clemenstine* v. *Williamson* (8 Cranch, 72), MARSHALL, Ch. J., says: "It has been frequently decided that acknowledgment of a debt, barred by the statute of limitations, takes the case out of that statute, and revives the original cause of action.  So far as decisions have gone, principles may be considered as settled, and the court will not lightly unsettle them.  *  *  *  It is not sufficient to take the case out of the act that the claim should be proved, or be acknowledged to have been originally just; the acknowledgment must go to the fact that it *is still due.*"

The same learned judge, in *Wetzell* v. *Buzzard* (11 Wheat., 309), remarked: "It is contended on the part of the plaintiff that he has proved an acknowledgment of the debt, and that such acknowledgment, according to a long series of decisions, revived the original promise, or it lays the foundation upon which the law raises a new promise.  The English and American books are filled with decisions which support this general proposition.  An unqalified admission that the debt was due at the time, has always been held to remove the bar created by the statute."

In *Bloodgood* v. *Bowen* (4 Seld., 308), GARDINER, J., says: "A mere acknowledgment of an indebtedness is but evidence from which a promise to pay may be inferred.  When it is unconditional, a court or jury may infer a willingness to pay, or a promise to that effect, because it would be difficult to assign any other reason for a voluntary admission of this sort."

MARCY, J., says, in *Depeyster* v. *Swart* (3 Wend., 139), "that the bare acknowledgment of a debt, barred by the statute of limitations, is held to revive it."

In *Purdy* v. *Austin* (3 Wend., 189), the same justice says,

after discussing the reasoning of the court in *Sands* v. *Gelston*, that the unqualified and unconditional acknowledgment of a debt, made by a party within six years before suit brought, is adjudged at law to imply a promise to pay.

In *Bell* v. *Morrison* (1 Pet., 351), Justice STORY, in delivering the opinion of the court, observes, that "the rule announced in 11 Wheaton was the result of a deliberate examination by the court of the English and American authorities," and adds : "We adhere to the doctrine as there stated, and think it the only exposition of the statute which is consistent with its true object and import." He then says : "If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of the previous subsisting debt which the party is liable and willing to pay." At the conclusion of the opinion, he says that it is to be understood that it is not unanimous, but that of a majority of the court, and that it has been principally, if not exclusively, influenced by the course of decision in Kentucky on this subject. I think particular note should be made of this remark, as Judge STORY's observations in this cause have been disapproved of by two of the judges of our own State, hereafter alluded to. It is to be observed that Judge STORY introduces an element which is not, so far as my researches extend, contained in any previous authority, viz. : that the party making the ·acknowledgment must be "willing to pay." He does not say that he must express that willingness, as some judges have supposed, or whether that willingness may be inferred from his acknowledgment of the previous subsisting debt. I think the latter view must be the correct interpretation of this remark, as I am unable to find any dictum of any judge anterior to this, that in addition to the acknowledgment it was required that the party must also express a willingness to pay. In *Purdy* v. *Austin* (*supra*), the judgment was reversed on the ground that the acknowledgment of the defendant did not amount to an unequivocal and positive recognition of the subsisting claim in favor of the plaintiff.

In *Stafford* v. *Bryan* (3 Wend., 535), Sutherland, J., in delivering the opinion of the Court of Errors, says: "An acknowledgment, which is to have the effect of taking a demand out of the effect of the statute of limitations, ought to be clear and explicit in relation to the subject of the demand to which it refers. The acknowledgment or new promise is to be affirmatively established by the plaintiff." He adds: "Although I cannot yield my assent to all the points decided in that case (*Bell* v. *Morrison*), nor to all the reasonings and positions advanced by the learned judge who delivered the opinion of the court, the general views to which I have assented appear to me to be sound and impressive." In *Dean* v. *Hewitt* (5 Wend., 257), Marcy, J., remarks, that "the statute of limitations proceeds upon the presumption of payment; a recognition of the existence of the debt, after the statute has attached, revives the remedy which was lost, but the cause of action is the same as it was before the remedy. This court has always considered the acknowledgment or new promise as a continuance of the old promise. * * * The acknowledgment rebuts the presumption of payment; and when made before the statute attaches, has the same effect as though made afterwards. It keeps alive, if I may so express it, the remedy. * * * It cannot be said that the new promise either revives the cause of action or the remedy; it only continues the latter." He adds, that he is aware that some of the positions there stated conflict with the views of Mr. Justice Story, as expressed in *Bell* v. *Morrison*, but we cannot yield to these views, and give full effect to them, without unsettling principles that have been so long established as to entitle them to be evidence of the laws of this State.

In *Hancock* v. *Bliss* (7 Wend., 267), Chief Justice Savage said, the acknowledgment must however be explicit, and without a denial of the equity or legality of the demand: hence if the defendant denies the justice of the demand, or reposes himself upon the statute, a promise will not be presumed.

In *Patterson* v. *Choate* (7 Wend., 445), the court, by Suth-

ERLAND, J., held that an acknowledgment of an existing indebtedness was sufficient to raise a new promise. There the witness first stated what the defendant said, as follows: That "the balance as exhibited by their books of account was due to the plaintiff at the time of the dissolution of the copartnership, and had not been paid to his knowledge." Upon being interrupted by the plaintiff's counsel, he said the expression used by Patterson was that the balance was due at the time of the dissolution, and *still is due*, as witness thought; it might have been, that it was then due and had never been paid; either version of it amounts to a clear and explicit admission of a subsisting indebtedness.

In *Gailey* v. *Crane* (21 Pick., 523), the Supreme Court of Massachusetts says, the doctrine laid down in the case of *Bangs* v. *Hall* (2 Pick., 368), was well considered, has since been tested by experience, and is undoubtedly sound and wise. It has been everywhere acknowledged as sound law, (citing a large number of authorities to sustain this position). The court further say, "the principles there laid down are, that to take a debt out of the statute of limitations there must be either an express promise to pay, *or* an unqualified acknowledgment of *present* indebtedness. In the latter case the law will imply a promise to pay."

In *Allen* v. *Webster* (15 Wend., 284), SAVAGE, Ch. J., after reviewing all the authorities, says: "Whatever therefore may be the true philosophy of the rule, and learned judges have differed on that subject, yet since the case of *Sands* v. *Gelston*, there has been no dispute as to what the rule in fact is, to wit: that to revive a debt barred by the statute of limitations, whether the statute theoretically operates upon the debt itself, or upon the remedy only, there must be an express promise or an acknowledgment of a present indebtedness, a subsisting liability, and a willingness to pay." This last remark about a willingness to pay has no foundation but Judge STORY's observation in *Bell* v. *Morrison*, and which had been disapproved of by two of our judges; GARDNER, J. states the rule as he is inclined to think it is in *Wakeman* v. *Sherman* (5 Seld., 91), in these words: "That to revive a demand thus barred

there must be an express promise to pay, either absolute or conditional, *or* an acknowledgment of the debt as subsisting, made under such circumstances, that such a promise may ·be fairly implied." And this case also enunciates the rule laid down in many other cases, that the acknowledgment of existing indebtedness or the promise to pay must be made to the party to whom the debt is due, or to his agent: an acknowledgment or promise to a stranger will not answer.

As has been seen from the remarks of Chief Justice SPENCER in *Sands* v. *Gelston*, something more has been required to establish a debt against a bankrupt, which has been discharged by his certificate, or a discharge from his debts under an insolvent law. In the latter case the debt has ceased to exist. It has been extinguished, and though the moral obligation notwithstanding remains to pay it, and is held to be a good consideration for the promise to pay it, yet there must be a new promise equivalent to a new contract. In the case of a debt barred by the statute of limitations, we have seen that the debt is not discharged, but the remedy by action is only taken away or suspended until the debt is revived. In the case of *Roberts* v. *Morgan* (2 Exch., 736), EYRE, Ch. J., says a debt barred by a certificate, under a commission of bankruptcy by a new. promise to pay it, becomes a new debt. Lord MANSFIELD also says, when there has been a new promise after the discharge, the bankrupt is liable as on a new contract. (Doug., 192). The moral obligation uniting to the new promise makes.what he calls, in the case of *Truman* v. *Fenton* (Cowp., 544), " a new undertaking and agreement."

In *Dupuy* v. *Mount* (3 Wend., 135), MARCY, J., says: " The bare acknowledgment of a debt barred by the statute of limitations is held to revive it; but an acknowledgment of a debt from which the defendant has been discharged, be it ever so explicit, gives no chance of action." After referring to the authorities also alluded to, he says: " The authorities clearly show that the new promise is the contract upon which the action against the defendant must rest. The old debt has no further connection with this suit .than what arises

from the circumstance that it is resorted to for the purpose of furnishing a consideration for the promise, by reason of its moral obligation after its legal obligation is destroyed by the discharge. The liability, therefore, of the defendant is on the new contract."

A protracted struggle has been maintained in the courts, on the one hand to protect infants or minors from their own improvidence and folly, and to save them from the depredations and frauds practiced upon them by the designing and unprincipled, and on the other to protect the rights of those dealing with them in good faith and on the assumption that they could lawfully make contracts.

Much discussion has been had in the books, by eminent and learned judges, whether the contracts of an infant were void or voidable, and the earlier decisions were that such contracts were void. And the method adopted by the courts to protect an infant against the effects of his own weakness, has been to consider his acts as not binding. (Bingham on Infants, 5). Miserable (says Lord MANSFIELD, in 3 Burr., 1801), must the condition of minors be, excluded from the society and commerce of the world, deprived of necessaries, education, employment and many advantages, if they could do *no* binding acts. Great inconvenience must arise to them if they were bound by no act. The law, therefore, at the same time that it protects their inability and indiscretion from injury, through their own imprudence, enables them to do binding acts, and without prejudice to themselves, for the benefit of others. And in that case (*Couch* v. *Parsons*), it was expressly decided that an infant's conveyance, by lease and release, was voidable only and not void. This decision has been considered by many judges and lawyers as unsound, and particularly by Mr. Preston, in his work on Conveyancing, in which he says, "no lawyer of eminence has thought it safe to follow that decision in practice. To admit, indeed, that such a decision is law, is to confound all distinctions and to oppose all authorities on this head" (2 Preston on Con., 248); and at page 375 he also says: "It would be well for every lawyer that such a decision had never existed." These

views of this learned author show how firmly implanted in the legal mind was the doctrine, that the acts and contracts of an infant were void and not voidable.

We shall see that the modern doctrine is fully in harmony with that laid down in *Couch* v. *Parsons*, and that such is now the well and firmly established rule of law. A *void* act never is nor ever can be binding, either on the party with whom it originates or on others. All who claim through or under it must fail, and it never can, at any time or by any means, be confirmed or rendered valid. A *voidable* act is binding on others, until disaffirmed by the party with whom it originated: it is capable, at a proper time and by proper means, of being confirmed or rendered valid. (Bing. on Inf., 7.)

I think it will be found, on a careful examination of the cases and the current of decision by learned judges, that the doctrine of an express promise by an infant, after his attaining his majority, being necessary to establish a contract as binding made by him during infancy, originated mainly from two sources: first, the notion of the English judges that it was their peculiar duty to protect infants from their own acts of imprudence and folly; and, second, that their contracts being wholly void, something must be done equivalent to a new contract after coming of age to make that legal and effective which before had no force or existence. And from this latter consideration, I think, another error had its origin into which so many judges have fallen, that, to make binding a contract of an infant after he attained his majority, acts must be done of an equal character or degree which a bankrupt discharged from a debt must perform to give new life, vigor and vitality to a debt discharged and canceled by his bankrupt or insolvent discharge. The promise to pay a debt discharged under an insolvent law, as we have seen, becomes a new contract. In the case of *Roberts* v. *Morgan* (2 Exch., 736), EYRE, Ch. J., says a debt barred by a certificate under a commission of bankruptcy, by a new promise to pay it, becomes a new debt. Lord MANSFIELD also says, when there has been a new promise after the discharge, the bankrupt is

liable as *on a new contract.* (Doug., 192.) The moral obligation, uniting to the new promise, makes what he calls, in the case of *Truman* v. *Fenton* (Cowp., 544), " a new undertaking and agreement."

In *Lynbury* v. *Weightman* (5 Exch., 198), Lord ELLENBOROUGH said, that in order to bind a bankrupt by a new promise, he should expect a positive and precise promise to pay ; and in a note to this case, *it is said* that bankrupts and infants stand on a different ground with respect to debts from which they are discharged.

If the contract· of the infant be not void, but only voidable, can it be justly said that it has been discharged paid, that is, as if it had no existence ? It seems to me not, and that the course of argument of many learned judges, in assuming that the contract of the infant and that of a bankrupt discharged by the act are to be placed on the same footing, cannot be sustained either by sound reasoning or by authority. I think the foundation of the reasoning lies in the assumption that the contracts of the infant were void. If this were so, then the analogy would certainly be complete. But if voidable only, then it is submitted that it wholly fails, and that the contracts of an infant, which are only suspended during his minority, may be revived and ratified by him on arriving at age, upon the same principles, and for the same reasons, and by the same means, as a debt barred by the statute of limitations may be revived and restored to its pristine vigor and efficacy. A review of the cases will, I think, warrant us in arriving at this conclusion.

In *Stone* v. *Weythipol* (Cro. Eliz., 126), an action was brought against the executor of an infant, on a debt due by him, and which he had promised to pay. Egerton, for the plaintiff, contended that the promise of an infant is not void, but for his non-age he may help himself by plea ; but if debt had been brought against him, and he pleads *nil debet*, it shall be found against him, and if at his full age he had payment, it had been good and *in foro conscientiæ*, the promise of the infant had been good. Coke contended, that it is no consideration, for every consideration that doth charge

the defendant in an assumpsit must be to the benefit of the defendant, or charge of the plaintiff, and no case can be put out of this rule, and this contract by the infant was void; and afterwards the court was clear of the opinion that the action did not lie, for the contract of the infant was merely void, and in debt against him he might plead *nil debet*. Egerton then said, "it had been adjudged in that court, in *Edmonds* v. *Burton*, that when an infant was bound in an obligation, and at his full age he promised payment, an action was maintainable against his executor on this promise, to which the court agreed, for the *bond*, which was the ground of it, was not void, but voidable, and he could not plead *non est factum* or *nil debet* to a bond, and if at his full age he had accepted a defeasance of the bond, this had made it good, and in the case cited the promise was by the infant himself, which in conscience he ought to pay." *Moning* v. *Knoss* (Cro. Eliz., 700), was an action of assumpsit, where an infant being bound in a bond for the payment of £17 at his full age, in consideration that the plaintiff, the obligee, would stay the suit he had brought on the bond, he answered that he would pay the £17 on a certain day after. Upon non-assumpsit pleaded, it was found for the plaintiff, and it was alleged in arrest of judgment that there was not any consideration to ground an assumpsit, and in proof thereof the case of *Stone* v. *Weythipol* (*supra*) was cited; for the bond, not being sufficient to bind him, there is not any cause for him to make this assumpsit, and of this opinion was TURNER, but CLINCH arrested, and the other judges being absent, the matter was adjourned.

In *Thrupp* v. *Fielden* (2 Ex., 628), the action was assumpsit, and the plaintiff proved a payment of £40, on account of the bill, since defendant came of age. For the plaintiff, it was contended that this was an admission by the defendant of his liability to pay, and tantamount to a new promise. But Lord KENYON said: "This is not such a promise as satisfies the issue. The case of infancy differs from the statute of limitations: in the latter case, a bare acknowledgment has been held to be sufficient. In the case of an infant, I shall hold an acknow-

ledgment not to be sufficient, and require proof of an express promise to pay made by the infant after he had attained that age when the law presumes that he has discretion."

It seems to me, these cases have proceeded on the principle, that the obligations of the infant were void, and that on his attaining his majority he was as much discharged from them, on that ground, as a bankrupt is by his discharge under the bankrupt or insolvent laws.

It will be convenient here to examine the course of decision in this country upon this branch of the law.

In an early case in Connecticut (1809) — *Rodgers* v. *Hand*, (4 Day, 57).— the Supreme Court of Errors held, that all contracts made by infants against their interest were void, and that the same evidence might be required of the confirmation of a voidable contract after full age as of the execution of a new one, to avoid fraud and imposition.

This case was followed by the court in *Benham* v. *Bishop* (9 Conn., 333). DAGGETT, J., there lays down the rule very broadly, that the note of an infant cannot be satisfied by merely acknowledging that he made it, or that it is due. Unlike an admission of the debt barred by the statute of limitations, which has been held to remove the bar, and authorize a recovery, he says, in the case of a note or bond of the minor, there must be a promise to pay when of full age.

In *Wilcox* v. *Roath* (12 Conn., 550), the language used by the court is broad and sweeping. It is, that it has been contended that the evidence which would take a case out of the statute of limitations is sufficient to prove the ratification of a contract made by an infant. Such, however, the court says, is not the rule. The cases are not analogous. They stand on different grounds, and are governed by different principles. *In the one case*, the debt continues from the time it was contracted. A new promise merely rebuts the presumption created by the statute, and the plaintiff recovers, not on the ground of any new right of action, but that the statute does not apply to bar the old one. *In the other*, there never was any legal right capable of being enforced,

Opinion of the Court, per DAVIES, J.

and in case of a promise, after the infant became of age, to take upon himself a new liability, proceeded, indeed, upon a moral obligation existing before. Accordingly, it is well settled that a bare acknowledgment is sufficient to take a case out of the statute of limitations. But in regard to the contract of an infant, it has been repeatedly adjudged that there must be an express promise to pay the debt after he arrives at full age, otherwise there is no ratification.

In *Smith* v. *Mayo* (9 Mass., 62), the Supreme Court held that a direct promise when of age is necessary to establish a contract made during minority, and that a mere acknowledgment, as in cases under the statute of limitations, will not have that effect; and it is also stated that the rule is, that such promise must be made deliberately and with a knowledge that the party is not liable by law. In this case the infant made a bond, and, after he came of age, made his will, disposing of his estate, "after his just debts are paid;" and the court held, that this expression did not amount to a promise to pay the bond; that it contained a direction only to pay just debts, and there was nothing in the case from which the court could infer that what was not in law a debt could be considered by the testator as a just debt. The same doctrine was repeated in *Ford* v. *Phillips*, on the authority of this case, and it was affirmed that a direct promise was necessary: a mere acknowledgment of the debt is not sufficient. But the true doctrine is more accurately laid down in *Whitney* v. *Dutch* (14 Mass., 460). There, PARKER, Ch. J., says: "By the authorities, a mere acknowledgment of the debt, such as would take a case out of the statute of limitations, is not a ratification of a contract made during minority. The distinction is, no doubt, well taken. The reason is, that a mere acknowledgment avoids the presumption of payment which is accepted by the statute of limitations; whereas the contract of an infant may always, except in certain cases sufficiently known, be voided by him by plea, whether he acknowledge the debt or not, and such positive act or declaration on his part is necessary to defeat his power of avoiding it. *But the terms of the ratification need not be such as to*

*import a direct promise to pay.*   All that is necessary is, that he expressly agrees to ratify his contract, not by doubtful acts, such as payment of a part of the money due, or the interest, but by words, oral or in writing, *which* import a recognition and a confirmation of his promise."

In *Thompson* v. *Lay* (4 Pick., 48), PARKER, Ch. J., says the cases of *Whitney* v. *Dutch* and *Ford* v. *Phillips* explicitly lay down the principle that the promise of an infant cannot be revived, so as to sustain an action, unless there be an express confirmation or ratification after he comes of age.   " A promise to pay is evidence of a ratification ; so is a direct confirmation, though not, in words, amounting to a direct promise ; as if the party should say, after coming of age, ' *I do ratify and confirm,* or, ' I do agree to pay the debt.' "   And in *Read* v. *Batchelder* (1 Metc., 559), SHAW, Ch. J., says, the question, what acts of an infant are voidable and what void, is not very definitely settled by authorities ; but, in general, it may be said, the tendency of modern decisions is to consider them voidable, and thus leave the infant to affirm or disaffirm when he comes of age, as his own views of his interest may lead him to elect, and that it is established in Massachusetts that the note of an infant is voidable only, and may be regarded as a good foundation for a new promise when he comes of age — (citing *Whitney* v. *Dutch* and *Thompson* v. *Lay, supra,* and *Martin* v. *Mayo,* 10 Mass, 137.)

In *Pierce* v. *Tobey* (4 Metc., 168), the court said : " A contract made by a minor may be affirmed after his arrival at full age ; and if so done, and by words proper to give it force and effect, as a valid contract, it will be operative and binding upon him.   A mere acknowledgment of a debt so existing is not sufficient ; but there must be a direct promise, *or a direct confirmation,* before any liability attaches."

In *Hall* v. *Gerrish* (8 N. H., 574), the Supreme Court of that State say : " An acknowledgment of a subsisting debt, when a claim has been barred by the statute of limitations, furnishes evidence, unless explained or qualified, from which a new promise may be implied ; but the promise of an infant cannot be revived so as to sustain an action, unless there be

*an express confirmation* or *ratification,* after he comes of age. This ratification must either be a direct promise or by saying, 'I ratify and confirm,' or, 'I agree to pay the debt,' or by positive acts of the infant, after he has been of age a reasonable time, in favor of his contract, which are of a character to constitute a perfect evidence of ratification as an express and unqualified promise." To the same effect is the case of *Robbins* v. *Eaton* (10 N. H., 561).

We will now advert to the course of judicial decisions in this State. A reference has already been made to the remarks of Chief Justice SPENCER, in *Sands* v. *Gelston,* where he observed that he could never see the difference, as regards the revival of a debt, between one barred by the statute of limitations and one from which the debtor had been discharged under the bankrupt or insolvent laws. He says: "There is no substantial difference between a debt barred by the statute of limitations, and a debt from the payment of which the debtor is exonerated by a discharge under a bankrupt or insolvent act. *A fortiori,* a debt not discharged, as that of an infant, ought certainly not be placed on the same footing with one which is."

I think we shall find, on examination of the cases in this State, that there has been a great change of views and modification of opinion on the subject of infant's contracts. All the cases hold that the contract of the minor is not void, but voidable only. (*Goodsell* v. *Myers,* 3 Wend., 479; *Evertson* v. *Carpenter,* 17 id., 417; *Delano* v. *Parke,* 11 id., 85; *Bay* v. *Gunn,* 1 Denio, 108; *Taft* v. *Sargeant,* 18 Barb., 320.)

Having now, as I think, conclusively established that the promissory note or contract of an infant is voidable only, and not void, and that it is a subsisting liability, which cannot, however, be enforced without some further act on his part after he attains his majority, it will be necessary, in the next place, to inquire what is the rule of law in this State as to acts or declarations of his, which may have the effect of making it legally binding upon him, so that it may be enforced in the courts against him. It is well to bear in mind that principles of law

which were recognized and enforced to protect infants against their acts of indiscretion and folly while of such years, as the law assumed they could not act with prudence and discretion, should not be invoked to aid them in the perpetration of gross fraud, and to wrong the innocent and confiding.

Not a few have been of the opinion that a man, who, by representing himself as competent to contract, and on the faith of such representations does contract and obtain a benefit to himself, which he retains, should not be allowed afterwards, when that contract is sought to be enforced against him, to set up and allege that he had no legal power to make the contract, and therefore he was not liable on it. Common honesty and fair dealing among men would seem to require that he should be estopped from setting up such a defense.

It is certainly the duty of courts not to aid such defenses, when their countenance can be withheld without doing violence to established principles of law. If we find that the rules of law, as expounded by the courts and learned authors, will sustain us in overruling such a defense, we should not be slow in following their leadings. We have seen by the earlier cases, that to bind a bankrupt or infant there must be proven a precise and positive promise to pay the particular debt, after the discharge, or after attaining full age, and the reason assigned was, that in such cases they were discharged from their liabilities, or were never subject to answer. This was certainly so as to the bankrupts, and undoubtedly so as to the infant, if his contract was void. He had no capacity to make it, and his state of infancy discharged him therefrom, or made it no contract. In both cases the debts were in the eye of the law as though they had never been, and therefore the court in this respect required proof equivalent to a new contract to make them binding.

But it has been found, on a more careful examination of the cases, the later ones especially, that the contracts of an infant were not void, but only voidable, and therefore the ground was changed, and a different element was thrown in; and the courts have adopted the more sound and sensible rule, that ratification or confirmation of the contract made in

infancy will bind the party if done after his coming of age. This new promise, positive and precise, equivalent to a new contract, is not now essential; but a ratification or confirmation of what was done during the minority, is sufficient to make the contract obligatory. These words, ratify or confirm, necessarily import that there was something in existence to which the ratification or confirmation could attach, entirely ignoring, therefore, the notion that an infant's obligations or contracts were discharged or extinguished by reason of the state of infancy. And it was said in the case of *Whitney* v. *Dutch* (*supra*), that the terms of the ratification need not be such as to import a direct promise to pay. All that is necessary is that the infant, after attaining his majority, should expressly agree to ratify his contract by words, oral or in writing, or by acts which import a recognition and a confirmation of his promise. In *Goodsell* v. *Myers* (*supra*), Savage, Ch. J., said: " A ratification of an infant's contract should be something more than a mere admission *to a stranger* that such a contract existed; there should be a promise to a party in interest or to his agent, or at least an explicit admission of *an existing liability*, from which a promise is implied." This rule is affirmed in *Delano* v. *Blake* (*supra*). In the case of *The Merchants' Fire Ins. Co.* v. *Grant* (2 Edw., 544), the vice-chancellor held, that a provision in a will, made after attaining full age, directing "all his just debts and personal expenses to be first paid and satisfied," was a confirmation of a mortgage given by the testator while an infant.

In *Bigelow* v. *Granniss* (2 Hill, 120), the court says: " In the case of infancy, there must be a new promise, or a ratification of the contract, after the defendant has attained the age of twenty-one years, and so in the cases of contract. The minds of the parties must meet. A promise to a stranger will not answer."

The same rule is recognized in *Watkins* v. *Stevens* (4 Barb., 168).

I think that the course of decision in this State authorizes us to assume that the narrow and stringent rule, formerly enunciated, that to establish the contract, when made in

infancy, there must be a precise and positive promise to pay the particular debt, after attaining majority, is not sustained by the more modern decisions. A brief reference to the course of legislation and decisions in England of a more modern date, will illustrate and confirm these views. In 1828 an act was passed, called Lord TENTERDEN's act, (9 Geo. IV., ch. 14), having reference to the acts necessary to be done to revive and give full force to the contracts barred by the statute of limitations and the contracts of infants.

A statute had been passed in 6 Geo. IV (65 Stat. at Large, p. 46), in reference to bankrupts, the 131st section of which declares that no bankrupt, after his discharge, shall be liable to pay or satisfy any debt, claim or demand from which he shall have been discharged, upon any contract, promise or agreement made or to be made after the suing out of the commission, unless such promise, contract or agreement be made in writing, and signed by the bankrupt or some person authorized by him.

The first section of the act of 9 Geo. IV declares that, to take a debt or simple contract out of the operation of the statute of limitations, no acknowledgment or promise by words orally shall be deemed sufficient evidence of a new or continuing contract, and to make it operative, such acknowledgment or promise shall be in writing, signed by the party to be charged thereby.

And section 5th enacts, that no action shall be maintained whereby to charge any person upon any promise, made after full age, to pay any debt contracted during infancy, *or* upon *any ratification, after full age, of any promise or simple contract*, made during infancy, unless such promise or ratification shall be in writing, to be signed by the party to be charged thereby. The framers of this act make the same distinction as the courts in this State, viz: a promise to pay, and a ratification of a promise or of the contract; the only difference now being, that in England such promise or ratification must by this statute be in writing, while with us it may rest in parol or acts. The principle is the same in both countries, and the difference is only in matter of evidence.

In *Hartley* v. *Wharton* (11 Adol. &. Ellis, 934), an infant was held to have ratified a contract for the purchase of goods sold and delivered to him during infancy, by a letter or paper, which was given to the agent of the plaintiff when he called and demanded payment of the debt.

He made no other answer, and the paper had no address. It was in these words: "Sir, I am sorry to give you so much trouble in calling, but I am not prepared for you, but will without neglect remit you in a short time. Yours respectfully, Frederick Wharton." Lord DENMAN, Ch. J., says, the effective words in the act are, "promise" and "ratification." The mischief to be provided against was, not the want of particularity as to the sum, but looseness of proof as to the fact of acknowledgment, and the defendant was held to have ratified the contract.

*Harris* v. *Wall* (1 Exch., 122), is an important case, and deserves careful consideration. It was an action of assumpsit by indorsee against the acceptor of a bill of exchange, dated 29th March, 1845, for the sum of £500. Defendant plead that, at the time of making the promise, &c., he was an infant, under the age of twenty-one years. Replication, that, before the commencement of the suit, and after he attained his full age of twenty-one years, he, the defendant, by a certain memorandum signed by him, ratified and confirmed the said contracts and promises, and then promised the plaintiff to pay him the moneys mentioned in the declaration. It appeared that there was another acceptance of the defendant for £1,500, but by whom held does not distinctly appear, though little doubt can exist it was by the plaintiff. It was proven that the defendant attained his full age on the 10th of December, 1845. The ratification and confirmation were sought to be made out by letters, addressed to the plaintiff, and written and signed by the defendant. The first, dated January 2, 1846, was in these words: "Mr. Harris: I should feel particularly obliged if you would arrange to keep the bills back for a little time, as my late brother's executors have lost their mother and only sister lately, and which prevents them from settling with you. The money will shortly be

paid, say £2,000. I have heard from Mr. Burnett this morning, and he tells me a Mr. Green has written to him for the money. Please arrange with him, and write to me by return." It is stated that the executors of defendant's brother, referred to in the foregoing letter, were the Messrs. Hall mentioned in defendant's letter of January 19, 1846. The defendant's brother had died in February, 1845, and had left him a considerable fortune, more than ample for the payment of the £2,000. When the bills became due they were dishonored, and the defendant shortly thereafter wrote the plaintiff as follows, under date of Jan. 6, 1846 : "The bills drawn out by Mr. Burnett and me, and my acceptances, one for £1,500, and the other for £500, due on the first of January last, will most likely be settled shortly, and would have been settled before, had not a sudden accident occurred, which prevented their being paid." On the 19th of Jan., 1846, the defendant addressed the plaintiff this letter : "Sir : I beg to inform you that I have this day forwarded your letter to Messrs. Hall, and also the letters from Messrs. Green and Burnett. I cannot exactly tell you about what time they will be settled, as I have not the money myself, and as I have told you before, have left it entirely in their hands." On the 25th of Jan., 1846, he again addressed to the plaintiff this letter : "Sir : I received your letter of yesterday, and am sorry to find that you are not contented with the letter I gave you when at my house some short time ago. I have heard from the Messrs. Hall yesterday, and they said they had written to their agents in Dublin to arrange the whole thing. I therefore beg you will immediately see and inform Mr. Lazarus, who I heard from this day, of it. It is not a bit of use writing these sort of letters, as payment will not be made the sooner for them. What I tell you is perfectly correct, and the matter will be settled shortly." ROLFE, B., in delivering the opinion of the court, says : "The question is, whether, from all or any of these letters, the court can say that the defendant ratified the promise made during his infancy to pay the £500 bill. There is some difficulty, in cases like the present, in understanding clearly what is meant by a ratification. * * * But, whatever

difficulty may exist, the case clearly recognizes ratification as
something distinct from a new promise. Indeed, Lord TEN-
TERDEN's act (9 Geo. IV, ch. 14), which was cited in the
argument before us, expressly makes a distinction between a
new promise and the ratification, after majority, of the old
promise, made during minority, in both cases requiring a
written instrument signed by the party. The first step, there-
fore, to take towards a decision of this case, is to understand
clearly what is meant by a ratification, as distinguished from
a new promise. We are of opinion (from Lord TENTERDEN's
act), that *any act* or *declaration*, which recognizes the exist-
ence of the promise as binding, is a ratification of it. As in
the case of agency, anything which recognizes as binding an
act done by an agent, or by a party who has acted as agent,
is an adoption of it. Any written instrument signed by the
party, which, in case of adults, would have amounted to
the adoption of the act of a party acting as agent, will, in the
case of an infant, who has attained his majority, amount to a
ratification. Applying this test to the case now before us,
we think it clear that there has been a ratification. There
cannot, we think, be a doubt but that if the bill in question,
instead of having been accepted by an infant, had been
accepted by A B on behalf of the defendant, being an adult,
the letter in question would have amounted to an adoption
of the agency of A B, and that the defendant would have
been liable. And he must, on the same ground, be liable in
the present case. He in truth treats his own act during
infancy as having been done on behalf of himself, after his
majority. Our decision is thus conformable to that of the
Queen's Bench, in *Hartley* v. *Wharton*, where, however, the
letter of ratification was certainly stronger than the letters
now before us. We should have had great difficulty in hold-
ing that the letters of the present defendant were such as to
amount to another promise; but, according to the meaning
we have attributed to the word ratification, we think that the
plaintiff has made out his ratification, and is therefore enti-
tled to judgment."

We have quoted thus liberally from this case, because, we

think, it states with clearness and accuracy the rules and principles applicable to cases of this character, and such as have been recognized and affirmed in our own courts.

The legislation and adjudications in England have clearly defined what is to be done, in the three classes of cases under consideration, to revive and make effective debts and contracts of infants, bankrupts, or those barred by the statute of limitations. In the latter case, they are revived and restored to their original vigor by an acknowledgment or promise; in the case of infants, by a new promise or ratification of the acts done in infancy, after attaining full age; and in the case of a bankrupt, by a new promise, contract, or agreement made after the discharge.

It may be conceded that the paper produced in evidence by the defendant, for want of a seal, could not operate as a deed and valid conveyance of the land therein mentioned. But clearly the defendant could have availed himself of it as a contract of sale of those lands, and have enforced a specific performance of it by a valid and effectual conveyance. All that the statute of fraud requires is, that a contract of sale of lands shall be in writing, and that such writing express the consideration and be subscribed by the party by whom the sale is to be made, or by his agent lawfully authorized. The evidence of the authority may be by parol. Neither a written authority nor an authority under seal is required. (*Worrall* v. *Munn*, 1 Seld., 229; 2 R. S., 135, §§ 8, 9; 10 Paige, 386; 5 Hill, 107.) But in the present case, the authority of the agent cannot be questioned. In the first place the principal, the present plaintiff, has fully ratified the act of his agent in making the sale. The commencement of this suit to recover the balance of the purchase-money, is a full and complete ratification of the sale by the agent to this defendant. Again, the plaintiff offered on the trial to show by the agent that he was authorized by the plaintiff to sell this land for him, and did so sell it; that he had a power of attorney from the plaintiff to sell and convey the lots, and that as such attorney he made and executed a quit-claim deed to the defendant of the lots. This testimony, which was

taken on commission, was offered by the plaintiff and objected
to, and excluded by the court as immaterial, and to which
the plaintiff excepted.   The defendant accepted the deed as
made out and executed by the agent, and went into posses-
sion under it, and, we are authorized to assume, as these facts
were offered to be proved, actually sold and conveyed away
a portion of the premises, and the defendant must be regarded
as having acquired at least an equitable title to the lands.
( *Worrall* v. *Munn*, *supra ;* *Delano* v. *Blake*, 11 Wend., 85 ;
*Roof* v. *Stafford*, 7 Cow., 179 ; *Palmer* v. *Miller*, 25 Barb.,
399 ; *Jones* v. *Phenix Bank*, 4 Seld., 234; Am. Lead. Cas.,
258.)  In *Delano* v. *Blake* (*supra*), the court, by Judge NEL-
SON, says : " The purchase by an infant of real estate is void-
able, but it vests in him the freehold until he disagrees to it,
and the continuance in possession after he arrives of age is
an implied confirmation of the contract."   So as to a lease
to an infant, the continuance in possession, after the party
arrives of age, is a confirmation, and he must pay the rent.
(Bac. Ab., tit. Infant, 611, 612.)

The infant in this case certainly acquired an equitable title
to the real estate purchased of the plaintiff.

He went into the possession and continued in possession
after he attained the age of twenty-one, and bargained and
sold a portion of the real estate, and received the considera-
tion therefor.   And these circumstances must be regarded
as affording the strongest evidence of his having affirmed the
purchase, and his consequent liability upon the note in suit.
When an infant purchases property, and continues to enjoy
the use of the same, and then sells it, or any part of it, and
receives the money for it, he must be considered as having
elected to affirm the contract, and he cannot afterwards
avoid payment of the consideration. (*Boody* v. *McKenney*,
10 Shep., 517 ; *Lawson* v. *Lovejoy & Green*, 405 ; *Bryden*
v. *Bryden*, 9 Metc., 519.)  In this last case, Chief Justice
SHAW observes, that if the infant, after coming of age,
retains the property purchased by him during his minority,
for his own use, or sells or otherwise disposes of it, such
detention, use or disposition, which can be conscientiously

done only on the asssumption that the contract of sale was a valid one, and by it the property became his own, is evidence of an intention to affirm the contract, from which a ratification may be inferred, when he purchases land and goes into possession, and continues in possession after his arrival at full age, for he thereby affirms the purchase and ratifies the contract of sale. (*Hubbard* v. *Cummings*, 1 Greenl., 11; *Boody* v. *McKenney*, *supra*; *Robbins* v. *Eaton*, 10 N. H., 561; Pars. on Cont., 271.)

In *Hubbard* v. *Cummings* (*supra*), Chief Justice MELLEN said, we have seen that the infant continued in possession of the lands until he sold to Cummings, and until after his arrival at full age. If an infant make an agreement and receive interest upon it after he is of full age, he confirms the agreement (citing 1 Verm., 132). Or if he make an exchange of land, and after he is of full age, continues in possession of the land received in exchange (2 Verm., 225). So if he purchase lands while under age, and continue in possession after he arrives at full age, it is an affirmation of the contract (Co. Lit. 3a; 3 Com. Dig., Enfant C. 6; 2 Bulstr., 69; 2 Vent., 203; 3 Burr., 1710). On this point, says the chief justice, the authorities seem clear and decisive; the law is plain as the fact. In *Robbins* v. *Eaton* (*supra*), the court say, some authorities confine an affirmation of a purchase of land to an actual subsequent sale of the same by the infant after he becomes of age; but it seems to be limiting to a very narrow point the evidence of affirmation of such a contract, and without any sufficient reason, as many other acts may constitute just as full and undoubted evidence of a design on the part of the infant to affirm such contract as an actual sale of the land. The court thinks the better authority to be, that if the grantee, being an infant, continues in possession of the land after becoming of full age, this is an affirmance of the contract. In the case at bar the ratification was attempted to be shown by the facts, that the infant continued in possession after full age, and sold a portion of the premises, and received the consideration therefor. Within all the cases these acts amount to an unequivocal ratification of the contract of

purchase by the infant, and settle conclusively his liability for the purchase-money. Another principle is firmly established by the cases, namely, that the infant on attaining full age cannot hold on to the purchase and thus affirm that, and plead his infancy to avoid the payment of the purchase-money. (*Kline* v. *Beall*, 6 Conn., 494; *Bigelow* v. *Kinny*, 3 Verm., 353; 4 Bacon Ab., 376; *Cheshire* v. *Barrett*, 4 McCord Law Rep., 241; *Lynde* v. *Budd*, 2 Paige, 191; *Kitchen* v. *Lee*, 11 id., 107; *Deason* v. *Boyd*, 1 Dana, 45; *Badger* v. *Phinney*, 15 Mass., 359).

In *Dana* v. *Coombs* (*supra*), the court say, had the suit been upon notes given for the purchase-money of land, and the defendant had set up the defense of infancy, it might well have been assumed that they were given as part of the consideration of the purchase of lands, which the tenant at full age chose to retain. In *Cheshire* v. *Barrett* (*supra*), the court say, a very slight circumstance demonstrating his assent will bind an infant, or any act by which his assent is manifested. Thus, if an infant purchase land and continue in possession, after he attains full age, it will be regarded as a confirmation of the purchase, citing cases. In *Lynde* v. *Budd* (*supra*), Chancellor WALWORTH held that an infant who had purchased land, by continuing in possession after he became twenty-one years of age, and conveying the land, affirmed the whole bargain and made himself legally liable for the payment of the residue of the purchase-money. And in *Kitchen* v. *Lee* (*supra*), the same learned judge declared the rule of law to be, that an infant cannot be permitted to retain the property purchased by him, and at the same time repudiate the contract upon which he received it.

It is therefore entirely clear upon all the authorities that the acts of the defendant, after he attained full age, were a ratification and confirmation of the contract of purchase, so as to render him liable to pay the purchase-money. The defendant set up in his answer, but did not prove, any failure of the consideration of the note. The only ground of defense set forth in his answer, proved and relied upon on the trial,

was that of infancy. It has been seen that that is unavailing to him.

It is now urged that as the deed of the plaintiff was not under seal, no valid title was conveyed to the defendant, and that therefore he has ratified or confirmed nothing. Several answers to these objections present themselves. In the first place, we have seen that the paper produced, if not valid as a deed, is as a contract for the sale of lands. It stated the consideration, the thing sold, and is signed by the party to be charged thereby, or his lawful agent. If the defendant has not got such a deed as he was entitled to under his contract, he can compel the plaintiff to give him one upon the payment of the purchase-money. He could have asked by his answer that such a deed be given, and it could have been provided for in the judgment in this action. It was the contract of purchase which the defendant has ratified and confirmed, by such unequivocal acts as make it binding and obligatory upon him, and subjects him to the payment of the purchase-money.

The judgment should therefore be reversed and a new trial ordered; costs to abide the event.

DAVIS, J. The note in suit was given by defendant, for the purchase price of lands situate in Nebraska Territory, on the 6th day of January, 1857. The defendant became of age on the 25th day of February following. At the time of receiving the note, the plaintiff, by his attorney, executed to defendant an instrument which, in form, purported to be a conveyance of the lands sold, but it was *without seal*, and, for that reason, invalid at common law as a conveyance of the title to real estate. No proof of the validity of this instrument, as a grant, under the law of Nebraska, was given on the trial. The legal presumption was, therefore, that the common law prevailed in that Territory, and that it was the same as the common law of this State. (*Holmes* v. *Broughton*, 10 Wend., 75; *Starr* v. *Peck*, 1 Hill, 353; 15 N. Y., 353; 2 How., 201.)

In answer to the defense of infancy, the plaintiff offered, in substance, to show that the defendant took possession of

the lands under the instrument above mentioned, and, after he became of age, sold a portion of them to one Perry, for the sum of $100, and executed to him, what is called in the offer, " a deed not under seal," which, it may be assumed, was an instrument like that executed to defendant by plaintiff. This was objected to by defendant, on the ground that he obtained no title by the paper he received; and on that ground the evidence was rejected by the court.

The fact of defendant's infancy at the time he gave the note having been established, it was incumbent upon the plaintiff, and competent for him, to show a ratification of the transaction by defendant after he attained his majority. The rejected offer was made with that view. The court below has sustained the ruling at Circuit, on the assumption that " the defendant never acquired any title to the land for which he gave the note, and that he never conveyed any title to another to any part of it." It is not asserted that, if the legal title had passed to the defendant by the instrument, his entering into possession and sale of a part of the land after he became of age would not have ratified his contract with plaintiff, and given validity to the note. (*Hubbard* v. *Cummings*, 1 Greenl., 11; *Robbins* v. *Eaton*, 10 N. H., 561; 1 Pars. on Cont., 271.)

It seems to me the court below overlooked the true question on this subject of ratification. Conceding that the instrument, for want of a seal, passed no legal title in the lands to the infant, did it not transfer to him a valuable equitable interest, which he could enforce and maintain against the plaintiff? Failing as a deed, it contains sufficient to constitute it a contract of purchase and sale between the parties, and it contains an agreement of warranty by which plaintiff undertakes " to warrant and defend the above property against the lawful claims of all persons whomsoever," with a specific exception. The fact that it is executed by but one of the parties, is no objection to its validity as a contract. In *Worrall* v. *Munn* (1 Seld., 229), it was held by the court that such a contract " can be enforced either at law or in equity against the vendor, and wanting mutuality

is no defense." It is upon sufficient consideration; and the offer was to show that the defendant entered into possession of the land under it. Under such a state of facts the rights of the infant under the contract would, in the courts of the State, be very clear. Upon the basis of this instrument and his possession under it, he could, on attaining his majority, have elected to enforce his equities by compelling the plaintiff to execute a proper conveyance; and I can conceive of no defense the plaintiff could have made, beyond, perhaps, the protection of payment of the consideration money, which the court would have given him. Who can doubt that on discovery by a vendee that a supposed deed of his property, of which he has taken possession and for which he has paid or secured the consideration, is defective for want of a seal, he may call on his supposed grantor to execute a perfect conveyance, and enforce his call by suit, if the vendor unjustly refuse? When the defendant became of age, he was under no obligation to have taken that course. The instrument as to him was voidable, and he might undoubtedly have avoided it, abandoned the possession of the lands and repudiated his note. He did not elect to do so. On the contrary, if the offer be, true, he retained the possession, several months afterward sold a portion of the lands to a third party for $100, and executed to him a supposed conveyance, but without a seal. It is essential to the rights of that party, as well as of the defendant, that this should be regarded as a ratification. As to him, the defendant has no defense of infancy to interpose; and unquestionably that person has acquired by his purchase all the rights in the parcel sold that defendant had under his contract with plaintiff. But it is enough for this case to say that the evidence offered tended to show a ratification; for it showed that defendant, after he became twenty-one, elected to deal with the property as his own, and to dispose of it accordingly. I am clearly of opinion that the evidence offered should have been received. The objection that the authority of the plaintiff's agent who executed the instrument was not shown, was of no force. The plaintiff was by the very suit affirming the authority,

by offering the supposed deed as his own, and by claiming and enforcing the note given for the consideration. And, under such circumstances, it was not necessary he should give evidence of the actual authority of his agent to make the instrument at the time it was made. Besides, the case passed off altogether on the other ground; and if the court had intimated an adverse opinion on this point, the plaintiff could doubtless have readily cured it by calling himself the agent and a witness.

In my opinion, the judgment should be reversed and a new trial granted, with costs to abide the event.

All the judges concurring,

Judgment reversed.